**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| JAMES AND KELARA GHAISAR, Individually and as Personal Representatives and Co-Administrators of the Estate of Bijan C. Ghaisar, Deceased, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:19-cv-1224 (CMH/IDD) |
| v. | ) ) | |
| UNITED STATES OF AMERICA, Defendant. | ) ) ) | |

_____

## <u>UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STAY</u>

Pursuant to Federal Rule of Civil Procedure 7, Defendant United States of America, through undersigned counsel, hereby moves to stay any further proceedings in this action pending a decision by the Fairfax County Commonwealth's Attorney on whether to pursue criminal charges for the same conduct at issue in this case, and if charges are filed, pending completion of the criminal proceedings.

## INTRODUCTION

Plaintiffs James and Kelara Ghaisar allege that the United States, through the actions of U.S. Park Police Officers Alejandro Amaya and Lucas Vinyard, caused the death of their son, Bijan Ghaisar.  On November 17, 2017, Officers Amaya and Vinyard shot and killed Bijan Ghaisar after a vehicular pursuit on the George Washington Memorial Parkway conducted in the course of their law enforcement duties.  Plaintiffs seek monetary relief from the United States under the Federal Tort Claims Act.

After an investigation by the Federal Bureau of Investigation ("FBI"), the United States declined to prosecute Officers Amaya and Vinyard for the events of that night.  But the Fairfax

1

County Commonwealth's Attorney is now determining whether to bring criminal charges against Officers Amaya and Vinyard for the death of Bijan Ghaisar—the very same conduct at issue in this case. Officers Amaya and Vinyard invoked their Fifth Amendment right against self-incrimination during depositions in this matter, and have indicated that so long as the Commonwealth's Attorney is considering criminal charges, they will continue to do so, including at a trial in this case. Although the United States, consistent with the nature of this Court's civil docket, has proceeded with discovery in the hopes that the Commonwealth's Attorney would make a prosecutorial decision before this stage of the civil action, that has not come to pass. The United States is therefore now faced with defending this case at trial without the testimony of its two key witnesses and respectfully requests a stay of proceedings until the Commonwealth's Attorney makes a decision on criminal charges.

Continuing with the proceedings here while criminal charges loom for Officers Amaya and Vinyard puts the United States in an untenable position. The United States itself has no privilege against self-incrimination, and has no control over the officers' decisions to assert their constitutional rights (indeed, the officers have had separate counsel throughout the litigation of this civil matter, and have never been represented by counsel for the United States). Yet the United States is faced with defending the actions of these two officers without the benefit of their testimony; although a large portion of the pursuit and the shooting itself have been captured on video, the officers' testimony would allow this Court, as factfinder in this FTCA action, to understand what those officers observed, and, in their own words, why they acted as they did. A stay would eliminate this risk of substantial prejudice to the United States, while concomitantly posing a low risk of prejudice to Plaintiffs. Extensive discovery in this matter has been taken, thereby preserving evidence for trial. Although this Court is permitted to draw adverse

inferences from the officers' silence, it is not required.  Thus, Plaintiffs face the possibility that this Court will decline to take the negative inference on certain necessary elements of their claims.  Moreover, both the parties and the Court run the risk that this matter will be decided *not* on evidence and fact but rather on questionable inferences resulting from the Commonwealth's public threats of the officers' prosecution.  Thus, to the extent Plaintiffs have brought this lawsuit to understand the events of November 17, 2017, that goal will not be met fully so long as the threat of criminal prosecution remains.

Public statements indicate that the Commonwealth's Attorney is nearing a decision on any potential criminal case.  Respectfully, it is in this Court's interest to stay the proceedings pending that decision; otherwise, this Court will be forced to rule on what is likely to become a trial-within-a-trial of Fifth Amendment privilege assertions.  And significantly, staying the civil proceedings pending a decision on criminal charges ensures that the civil case will not taint any potential criminal prosecution.

Finally, the public interest favors a stay.  Although there is an interest in expeditious resolution of civil matters, that interest gives way to the interest in full and fair proceedings in the criminal system.  Furthermore, the public has interest in this case being decided on a full factual record—one in which the officers can testify about their decisions on November 17, 2017.  Such interest is not served if this case proceeds without their testimony.

## BACKGROUND

Plaintiffs James and Kelara Ghaisar, individually and as representatives of the estate of Bijan Ghaisar, bring this Federal Tort Claims Action ("FTCA"), alleging that two United States Park Police Officers used excessive force on November 17, 2017 when the officers shot their son, Bijan Ghaisar, after a vehicular pursuit on the George Washington Memorial Parkway.

Three days after the shooting, the United States Park Police requested that the FBI investigate this officer-involved shooting.  USPPNews (@usparkpolicepio), TWITTER (Nov. 14, 2019 6:06PM), https://twitter.com/usparkpolicepio/status/1195115693357895681?s=20.  That criminal investigation remained underway when the first civil action was filed on August 3, 2018, which named both the United States and a series of "John Doe" defendants in their individual capacities.  *See Ghaisar v. United States, et al.*, No. 1:18cv854 (E.D. Va.).  Plaintiffs voluntarily dismissed that action after the United States moved to dismiss, arguing that Plaintiffs had brought wrongful death claims, including in their administrative tort claim, without first having the Circuit Court for Fairfax County appoint them as personal administrators of Bijan's estate, as required by Virginia law.  *See* VA. CODE ANN. § 8.01-50(C); *Bradley v. Johnson & Johnson*, 2012 WL 1957812, at *2-3 (E.D. Va. May 30, 2012).

After James and Kelly Ghaisar obtained the necessary Circuit Court appointment, they filed their second civil action on October 16, 2018, without first submitting administrative tort claims as the properly appointed administrators of Bijan Ghaisar's estate as necessary for this Court to have jurisdiction over the case.  *See Ghaisar v. United States, et al.*, No. 1:18cv1296 (E.D. Va.) ("*Ghaisar II*").  The District Court granted the United States' motion to dismiss the Ghaisars' FTCA claims, holding generally that because Mr. and Mrs. Ghaisar had not been appointed as administrators of the estate at the time that they submitted their administrative claims to the Department of the Interior, they lacked standing to seek tort relief on behalf of Bijan's estate, and thus had not properly presented an administrative claim prior to filing the action.  *See Ghaisar v. United States*, 2019 WL 386145 (E.D. Va. Jan. 30, 2019).

After the dismissal of the United States, the claims against the "John Doe" defendants remained in this second action.  Plaintiffs eventually amended their complaint to name Officers

Amaya and Vinyard as defendants in their individual capacities, raising constitutional tort claims pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).  On August 18, 2020, Plaintiffs and the Officers jointly stipulated to the dismissal of those claims.

After the dismissal of the United States from *Ghaisar II*, Mr. and Mrs. Ghaisar—now duly appointed as the personal administrators of Bijan Ghaisar's estate—filed a series of administrative claims (through Standard Form 95) with the Department of the Interior.    Mr. and Mrs. Ghaisar then filed this civil action against the United States in both their personal capacities and as administrators of Bijan Ghaisar's estate, seeking relief under the FTCA, on September 19, 2019.  *See Ghaisar v. United States*, No. 1:19cv1224 (E.D. Va.).

Shortly after Plaintiffs filed the instant action, in November 2019, the Department of Justice announced that it would not pursue criminal charges against Officers Amaya and Vinyard. Press Release, U.S. Attorney's Office for the District of Columbia, Federal Officials Close Investigation into the Death of Bijan Ghaisar (Nov. 14, 2019), *available at* https://www.justice.gov/usao-dc/pr/federal-officials-close-investigation-death-bijan-ghaisar. That announcement articulated the Department's view that it could not "prove, beyond a reasonable doubt, that the two [] officers committed willful violations of the applicable federal criminal civil rights statute when they shot Mr. Ghaisar," and that "specifically, the Department [would be] unable to disprove a claim of self-defense and defense of others by the officers."

The Court issued its scheduling order in this case on January 15, 2020, allowing discovery to commence and directing discovery to be completed by May 15, 2020.  Order (Jan. 15, 2020) (Dkt. 27).  Approximately two weeks later, on January 31, 2020, the newly-elected Fairfax County Commonwealth's Attorney announced that his office was considering criminal

charges against Officers Amaya and Vinyard for Bijan Ghaisar's death.  Tom Jackman, *Fairfax Prosecutor Looks into Ghaisar Shooting*, WASHINGTON POST, Jan. 31, 2020, at B5.

Approximately halfway through the discovery period, the COVID-19 pandemic reached Virginia.  On March 10, 2020, Chief Judge Mark Davis issued the first of several orders modifying court procedures to account for this unprecedented global pandemic.  *See generally* United States District Court for the Eastern District of Virginia, *Coronavirus Guidance* (last updated July 7, 2020), http://www.vaed.uscourts.gov/covid-19.html.  In late April, the parties requested to extend the discovery deadline to July 10, 2020, based on the difficulties in conducting discovery during state-mandated quarantines.  Joint Mot. For Ext. of Time to Complete Disc. (Apr. 27, 2020) (Dkts. 31-32).  Magistrate Judge Davis granted that motion.  Order (May 1, 2020) (Dkt. 34).

On June 7, 2020, the Commonwealth Attorney publicly stated that his office was "nearing completion of its review" of the FBI's investigative file.  Tom Jackman, *Prosecutor Says FBI Barred Files on Ghaisar*, WASHINGTON POST, June 7, 2020, at C1.  The Commonwealth Attorney stated that he wanted "to let people know that COVID-19 has not affected his progress on the case."  *Id.*  The Commonwealth Attorney also stated his prosecutors had "very constructive communication with local law enforcement partners as well as the Ghaisar family's lawyers."  *Id.*

Meanwhile, in mid-June 2020, it became necessary in this case to seek a limited, one-month extension of the discovery deadline, to account for difficulties scheduling in-person depositions during the pandemic.  Joint Mot. For Ext. of Time to Complete Disc. (June 19, 2020) (Dkts. 35-36).  The Court granted that motion.  Order (June 22, 2020) (Dkt. 39).  Before the close of discovery, Plaintiffs moved, unopposed, to amend the protective order in this case to

permit them to transmit to the Commonwealth's Attorney the expert reports authored in this case with respect to the Officers' use of force "as well as any other mutually agreed materials." Pls.' Mot. to Amend/Correct Protective Order (Aug. 7, 2020) (Dkts. 41-42). The motion was granted. Order (August 11, 2020) (Dkt. 43).

Amongst the multiple depositions taken by the parties in this case were those of Officers Amaya and Vinyard themselves, on August 4 and 12, 2020, respectively. Other than benign questions about their names, and what they did in preparation for the depositions, both officers *universally* invoked their Fifth Amendment right against self-incrimination as to all questions – each of which was asked in a leading manner. Officer Amaya's deposition is representative of this point, as over sixty (60) pages of deposition transcript, Officer Amaya invoked his Fifth Amendment rights, and politely declined to respond to questions about the events of October 17, 2017 – including the following:

Q. Do you know that the person that you murdered was Bijan Ghaisar?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true that you had no legal justification for shooting Bijan Ghaisar?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true that the decision to shoot Bijan Ghaisar was unreasonable?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true you were not in fear for your safety when you shot Bijan Ghaisar?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true you were not acting in defense of any other person when you shot Bijan Ghaisar?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true you were not acting in fear for anyone else's safety when you shot Bijan Ghaisar?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true that everything you say is a self-serving attempt to get yourself out of trouble?

A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true, sir, that you are a racist?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true that throughout the incident the only car that was driving erratically was your police car?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true that throughout this pursuit Bijan Ghaisar was never traveling at a high rate of speed?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true you had no information that Bijan Ghaisar was under the influence of alcohol?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true you had no information that Bijan Ghaisar was under the influence of marijuana?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

Q. Isn't it true that no one was ever in danger of being struck by Bijan Ghaisar's Jeep at any time during this incident on November 17th, 2017?
A. On advice of counsel, I decline to answer pursuant to the Fifth Amendment.

*Amaya Dep.* (attached as Exhibit A), at 9, 14, 16, 18-19, 55-56, 59-60, 61, 67, 123 (internal

objections and attorney colloquy omitted).

Discovery closed on August 14, 2020.  The final pretrial conference is set for August 20,

2020.

## ARGUMENT

This Court should stay any further proceedings in this action pending a decision from the

Fairfax County Commonwealth's Attorney on whether to pursue criminal charges against

Officers Alejandro Amaya and Lucas Vinyard for the death of Bijan Ghaisar.  "[T]he power to

stay proceedings is incidental to the power inherent in every court to control the disposition of

the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

*Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  "Because of the frequency with which

civil and regulatory laws overlap criminal laws, American jurisprudence contemplates the possibility of simultaneous or virtually simultaneous parallel proceedings and the Constitution does not *mandate* the stay of civil proceedings in the face of parallel criminal proceedings." *Ashworth v. Albers Medical, Inc.*, 229 F.R.D. 527, 530 (S.D. W.Va. 2005) (emphasis added) (citations and internal quotation marks omitted).  "Nevertheless, a court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions when the interests of justice seem to require such action, sometimes at the request of the prosecution, sometimes at the request of the defense." *Id.* (citation and internal quotation marks omitted).  Whether a stay is appropriate "is determined on a case-by-case analysis." *Id.* at 531.

The Fourth Circuit has not explicitly endorsed any particular factors for a court to consider when ruling on a motion to stay.  Consistent with case law in other circuits, in ruling on such motions district courts in the Fourth Circuit have considered: whether the parallel proceedings are related and involve substantially similar issues; the burden, including any potential prejudice that any particular aspect of the proceedings may impose on defendants; the interest of plaintiffs in proceeding expeditiously with the litigation, and the potential prejudice to plaintiffs of a delay; the interests of third parties; the convenience of the court; and the public interest.  *Id.* at 530-31 (surveying case law across circuits); *see also Anderson v. Fluor Intercontinental, Inc.*, 2019 WL 8161571, at *2 (E.D. Va. Nov. 8, 2019), *overruled on other grounds*, *In re Fluor Intercontinental, Inc.*, 803 F. App'x 697 (4th Cir. 2020).

As discussed *infra*, the weight of the factors favors staying the proceedings here.

**A.  The substantial overlap between this civil action and any potential criminal action favors a stay.**

A threshold issue is whether the parallel criminal and civil actions are sufficiently similar such that the proceedings are related.  "Absent this required nexus, the myriad of tangible concerns in favor of a stay, including the protection of a defendant's Fifth Amendment interest and the deleterious effect of civil discovery on the prosecution or defense, dissipates." *Ashworth*, 229 F.R.D. at 531; *see also Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995).  There is no dispute here that this civil action and any potential criminal action involve the same set of facts.  Plaintiffs allege in their complaint that the United States caused the wrongful death of Bijan Ghaisar, via the actions of Officers Amaya and Vinyard.  *See* Compl. (Dkt. 1) ¶¶ 161-182.  The Fairfax County Commonwealth's Attorney is considering criminal charges against Officers Amaya and Vinyard for Bijan Ghaisar's death.  Jackman, *Fairfax Prosecutor*, *supra*.  In other words, the Commonwealth's Attorney is considering criminal charges for the very same conduct at issue in this case.  This threshold nexus, therefore, is easily satisfied.

**B.  The United States will be substantially prejudiced if it is forced to defend this action without the testimony of Officers Amaya and Vinyard.**

Any motion for a stay of proceedings "must identify the specific harm or prejudice further testimony would present."  *Anderson*, 2019 WL 8161571, at *3; *cf. id.* (denying stay and noting that unlikely to identify specific harm because plaintiff had already provided multiple statements that could be used against him in a criminal proceeding).  Continuing with proceedings in this case, while the potential for criminal charges by the Commonwealth's Attorney still loom, would be a tremendous prejudice to the United States, as its two key witnesses will invoke their Fifth Amendment right against self-incrimination at any trial, as demonstrated by their recent deposition testimony.

The Fifth Amendment to the U.S. Constitution "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976) (citations and internal quotation marks omitted). In a civil case, the Fifth Amendment "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence officered against them." *Id.* at 319.

Organizations, like corporations, do not have Fifth Amendment privileges. *White v. Mapco Gas Prods., Inc.*, 116 F.R.D. 498, 502 (E.D. Ark. 1987). Similarly, the United States as a party-defendant does not have any privilege against self-incrimination. *See Keiper v. Victor Valley Transit Auth.*, 2016 WL 11651894, at *5 (C.D. Cal. May 19, 2016). But as a practical matter, organizational defendants – such as corporations and the United States – speak through their employees, who, as individuals, have Fifth Amendment privileges. *White*, 116 F.R.D at 503. The dilemma for non-party employees who may be called to testify in an organization's defense "'is severe—because they face serious penalties in the event of a criminal conviction, and because they are not themselves parties to this civil action.'" *Id.* (quoting *Golden Quality Ice Cream*, 87 F.R.D. 53, 58 (E.D. Pa. 1980)). Thus, "[t]he implication of the right against self-incrimination must be given serious consideration in the balancing of interests" when considering whether to grant a stay. *Id.* at 502.

There is a "substantial risk of prejudice" where testimony from either nonparty employees or individual defendants who invoke the Fifth Amendment are "likely to be instrumental" to the organizational defendant's defense. *Mr. Dee's, Inc. v. Int'l Outsourcing*

*Servs., LLC*, 2008 WL 4853601, at *2 (E.D. Wis. Nov. 3, 2008).  One recent example of such

prejudice in rather analogous circumstances can be found in *Ruszczyk as Trustee for Ruszczyk v.*

*Noor*, in which the district court stayed a civil wrongful death suit against two Minneapolis

police officers, the City of Minneapolis, and current and former police chiefs, pending an

outcome on criminal proceedings.  349 F. Supp. 3d 754, 758 (D. Minn. 2018).  Officer Noor,

who allegedly shot and killed the decedent, was charged in state court with murder and

manslaughter arising from the same set of facts underpinning the civil suit.  As such, he planned

to invoke the Fifth Amendment in the civil suit.  *Id.*  "Noor's assertion of his right against self-

incrimination will likely deprive [the municipal defendants] of information critical to their own

defense on the merits, where liability rests on a link between the City of Minneapolis's policies

and Noor's actions."  *Id.* at 762.  In order to defend the case, the municipal defendants "must

investigate Noor's observations and decisions in order to evaluate the reasonableness of his use

of deadly force."  *Id.*  But this information was unavailable to the municipal defendants because

Noor planned to invoke his Fifth Amendment right, over which the municipal defendants "have

no control."  *Id.*  "While the [other defendants] do not face the same perils of criminal

prosecution, their defenses and, in some respects, their fate are so intertwined with Noor's that

effective defense is also currently impossible while Noor's case remains pending."  *Id.* at 765.

Other courts have concluded similarly.  *See Micron Tech., Inc. v. United Microelectronics Corp.*,

2019 WL 3037542, at *3 (N.D. Cal. July 11, 2019) ("In sum, the risk of prejudice to

[organization defendants] arising from an inability to obtain testimony from individuals who

have the right not to incriminate themselves is substantial."); *Taylor, Bean & Whitaker Mortg.*

*Corp. v. Triduanum Fin., Inc.*, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009) (finding that

because officers took the Fifth Amendment, the defendant corporation was "greatly prejudiced in

its ability to meaningfully defend itself in the civil matter"); *Mr. Dee's*, 2008 WL 4853601, at \*2 (granting stay because risk of prejudice to organizational defendant was "substantial," where key witnesses invoked Fifth Amendment and therefore organizational defendant could not access key information and witnesses for its defense); *Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 266 (E.D.N.Y. 2002) (granting stay because the defendant's corporate officers planned to assert their Fifth Amendment rights and the officers were "central figures" in the corporation's defense); *Transworld*, 886 F. Supp. at 1141 (staying case as to all defendants and noting individual defendants were "central" to corporation's defense).

Here, Officers Amaya's and Vinyard's testimony are central to the United States' defense in this action. Officers Amaya and Vinyard are the only individuals who can testify as to their own personal observations and decision making rationales, which are significant to evaluate whether the use of deadly force was reasonable. *Ruszczyk*, 349 F. Supp. 3d at 762; *see also Keiper*, 2016 WL 11651894, at \*5 (stating driver, who invoked the Fifth Amendment due to pending criminal case arising from accident, "is the only person who can explain what prompted his actions and inactions"). Yet, in depositions, Officers Amaya and Vinyard invoked their respective Fifth Amendment rights against self-incrimination in a near-blanket fashion. And as long as there is the threat of criminal liability, the officers will likely invoke the Fifth Amendment at trial, whatever their wish may be to testify as to the reasonableness of their actions. *See* Br. in Support of Defs.' Amaya and Vinyard's Opposed Mot. to Ext. Disc. at 9, Ghaisar, *et al.* v. Amaya, *et al.*, 1:18cv1296 (Dkt. 60). Without their testimony, the United States has an extremely—and unfairly—limited ability to present a defense in this case.

The availability of the adverse inference further increases the risk of prejudice to both the United States and the Plaintiff. Of course, this Court (as the factfinder in this action), *see* 28

U.S.C. § 2402, may elect *not* to draw the adverse inference. Indeed, while the factfinder is

*permitted* to draw an adverse inference on a particular fact from invocation of the Fifth

Amendment, it is not *required*. Moore, 3 FED. JURY PROC. § 104:28 (6th ed.). Moreover,

"[w]hile an instruction permitting adverse inferences from a civil defendant's assertion of his

Fifth Amendment privilege is constitutionally permissible, it is not always appropriate." *United

States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633 (E.D. Va. 2006) (Ellis,

J.); *see also Ruszczyk*, 349 F. Supp. 3d at 762 ("Plaintiff will likely use Noor's privilege

invocation to help prove Noor's liability. While this is permitted by the law, 'the question of

whether it is fair does not yield the same answer in every case.'" (quoting *Chagolla v. City of

Chicago*, 529 F. Supp. 2d 941, 947 (N.D. Ill. 2008)). "'[T]he key to the *Baxter* holding is that

such adverse inference can only be drawn when independent evidence exists of the fact to which

the party refuses to answer.'" *DRC*, 415 F. Supp. 2d at 635 (quoting *Doe v. Glanzer*, 232 F.3d

1258, 1264 (9th Cir. 2000)). Taken together, this means that when a witness invokes the Fifth

Amendment, it is within the factfinder's sound discretion to either draw an adverse inference

from that invocation *or* to conclude that fact has not been proven—a risk equally applicable to

the United States as it is to Plaintiffs here. *See* Section C, *infra*.[1]

     Given the seriousness of the allegations in this case, the United States should be

permitted to mount its best possible defense, and the Court should be permitted to hear the actual

evidence, not merely draw inferences resulting from the Commonwealth Attorney's public

threats of prosecution. To achieve this result, however, requires the testimony of Officers

Amaya and Vinyard, which is unavailable to both the parties and the Court while the

---

[1]And of course, in order to make that determination here, this Court will be required to analyze the "independent evidence" available as to each of the multitude of questions that Plaintiffs' counsel asked of the officers at their respective depositions.

Commonwealth's Attorney considers whether to pursue criminal charges against the officers. Accordingly, this factor weighs heavily in favor of a stay.

### C. Plaintiffs face little risk of prejudice in delaying proceedings until after the Commonwealth's Attorney decides whether to prosecute.

There is little risk to Plaintiffs of prejudice by delaying the proceedings until after the Commonwealth's Attorney has made a decision on criminal liability and any criminal proceedings have concluded. *First,* both Plaintiffs and the United States have worked diligently to finish discovery during an unprecedented global pandemic. The parties have concluded fact and expert witness discovery (including both documentary and testimonial discovery), so there is little risk that evidence will no longer be available if the proceedings are stayed at this juncture. *See Ruszczyk*, 349 F. Supp. 3d at 760 (noting that because civil and criminal case involve "substantial overlap," evidence will be preserved through criminal process); *Volmar Distrib., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 40 (S.D.N.Y. 1993). *Second*, as noted *supra*, there is no requirement that the factfinder draw an adverse inference from Officers Amaya's and Vinyard's invocation of their Fifth Amendment rights. Should the factfinder decline to do so on a particular issue, Plaintiffs could be faced with a lack of evidence on that particular point. And while a stay "lengthens the time during which the Plaintiff[s] must address the traumatic events alleged," the pendency of the criminal action continues to lengthen that time, regardless of whether or not the civil matter proceeds. *Ruszczyk*, 349 F. Supp. at 761. And, Officers Amaya and Vinyard will continue to assert their Fifth Amendment rights so long as the threat of criminal prosecution remains. To the extent Plaintiffs have brought this suit to understand the events of November 17, 2017, that goal "would be enhanced, rather than diminished at this time, by a stay of this civil proceeding" while the Commonwealth's Attorney considers criminal charges. *Id.*

15

*Third*, while stays generally are not granted before an indictment has issued, *see Anderson*, 2019 WL 8161571, at *2, "a stay should not be categorically denied" because there is no indictment. *Vargas v. Cty. of Los Angeles*, 2019 WL 6655269, at *2 (C.D. Cal. July 10, 2019); *see also Estate of Limon v. City of Oxnard*, 2013 WL 12131359, at *4 (C.D. Cal. Dec. 10, 2013) (ordering partial stay of discovery while district attorney's office continued to investigate individual defendants to determine whether to bring criminal charges, even where "no clear timetable for the completion of the DA's criminal investigation"); *Salcedo v. City of Chicago*, 2010 WL 2721864, *3 (N.D. Ill. July 8, 2010) (granting stay where criminal investigations were "ongoing" and even though it was "unclear" when trial would be set for indicted individual defendants); *Chagolla*, 529 F. Supp. 2d at 946 (granting stay as to *all* individual defendants where only *some* had been indicted and unindicted defendants faced "only the threat" of indictment); *Jones v. City of Indianapolis*, 216 F.R.D. 440, 451-52 (S.D. Ind. 2003) (granting limited stay of discovery as to individual defendants while Department of Justice continued its criminal investigation). And as noted above, the completion of written and oral discovery here has preserved pertinent evidence for use in this civil action, and thus the need for an indictment to serve that purpose is not present here.

Rather, where there is *some* indication about the timing and scope of criminal charges, a stay may be appropriate. *Cf. Vargas*, 2019 WL 6655269, at *2 (denying stay because "the parties have not provided any information about the timing and scope of potential criminal charges, let alone any indicia that an indictment is imminent"). Public reports suggest that the Commonwealth's Attorney is nearing a decision. The Commonwealth's Attorney has publicly stated that his office has been "working tirelessly to comb through evidence and work towards a final determination on how to proceed." Jackman, *Fairfax Prosecutor*, *supra*. In early June, the

Commonwealth's Attorney stated his office "was nearing completion of its review" of the FBI file, which contains the majority of evidence in this case.  And the Commonwealth's Attorney has stated publicly that his office has had "very constructive communication with local law enforcement partners and the Ghaisar's family's lawyers."  Jackman, *Files*, *supra*.  In fact, Plaintiffs moved, unopposed, to modify the protective order in this case to permit them to share the use of force expert reports in this case, "as well as any other mutually agreed materials." Pls.' Mot. to Amend/Correct Protective Order (Aug. 7, 2020) (Dkts. 41-42).

> **D.  The Court's convenience favors a stay.**

Respectfully, the United States believes the Court's convenience favors a stay.  As previously noted, Officers Amaya and Vinyard universally invoked their Fifth Amendment privilege during their depositions, and have indicated they will do so at trial if the Commonwealth's Attorney is still weighing criminal charges.  Continuing with the proceedings here in this posture poses two challenges for the Court.  *First*, it could potentially create a problem of proof.  The Court, which sits as factfinder in this FTCA action, *see* 28 U.S.C. § 2402, may decline to draw an adverse inference on any given piece of evidence.  *Second*, given the multi-hour depositions of both Officers Amaya and Vinyard, in which they invoked the Fifth Amendment in response to nearly every question posed, the Court "will be forced to make numerous individual rulings on what will likely be a long series of Fifth Amendment assertions.'" *Ruszczyk*, 349 F. Supp. 3d at 764 (quoting *United States v. All Meat & Poultry Prods. Stored at LaGrou Cold Storage*, 2003 WL 21780963, at \*5 (N.D. Ill. Oct. 3, 2003)).  Trial will "become bogged down" as the Court will have to assess, question by question, whether the privilege was properly invoked.  *Ruszczyk*, 349 F. Supp. 3d at 764; *see Capitol Prods. Corp. v. Hernon*, 457 F.2d 541, 542 (8th Cir. 1972) ("There is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings.  The privilege must be specifically

17

claimed on a particular question and the matter submitted to the court for its determination as to the validity of the claim." (citations and internal quotation marks omitted)).

As a final matter, "[a] stay here would conserve scarce judicial resources." *Edwards v. Thomas*, 2020 WL 888538, at *5 (W.D. Ark. Feb. 24, 2020). The Commonwealth's Attorney's decision could "narrow the issues and simplify the parties' positions in this matter," should the Commonwealth's Attorney decide to proceed with criminal charges. *Id.* Therefore, this factor favors a stay.

### E. The public interest favors a stay.

As in *Ruszczyk*, "[t]he public has a great interest in this case." *Ruszczyk*, 349 F. Supp. 3d at 765. The public "has an interest in the prompt disposition of civil litigation," which would be delayed by any stay, but also "has an interest in ensuring that the criminal process can proceed untainted by civil litigation." *Id.* (citing *Chagolla*, 529 F. Supp. 2d at 947). There is the "possibility that the orderly progress of the criminal cases and investigations—particularly those involving the exact same incidents at issue in the present case—will be hindered" by continuing with the civil proceedings. *Id.* Where these two interests collide—prompt disposition of civil cases and fairness in criminal proceedings—"the civil case, which carries only civil [remedies], is not of an equally pressing nature," especially, where, as here, the potential criminal charges are serious in nature. *Id.* Furthermore, where there will be "heavy invocation of the Fifth Amendment, the record will be incomplete," which is counter to the public interest in having the issues in this case decided on the basis of a full factual record. *Id.* A stay here "serves the public's dual interests by protecting the integrity of the [Commonwealth's Attorney's] criminal investigation" and "safeguarding the constitutional rights" of Officers Amaya and Vinyard. *Estate of Limon*, 2013 WL 12131359, at *6.

**CONCLUSION**

For the foregoing reasons, the United States respectfully request that this Court grant its motion to stay the proceedings until the Fairfax County Commonwealth's Attorney has made a decision whether to bring criminal charges against Officers Amaya and Vinyard, and if charges are brought, until the completion of the criminal proceedings.


Dated: August 19, 2020                          Respectfully submitted,

                                                G. ZACHARY TERWILLIGER
                                                UNITED STATES ATTORNEY

                                        *By*: _____/s/_____
                                                DENNIS C. BARGHAAN, JR.
                                                Deputy Chief, Civil Division
                                                KIMERE J. KIMBALL
                                                MEGHAN LOFTUS
                                                Assistant United States Attorneys
                                                Office of the United States Attorney
                                                Justin W. Williams U.S. Attorney's Building
                                                2100 Jamieson Avenue
                                                Alexandria, Virginia 22314
                                                Tel:    (703) 299-3891/3763
                                                Fax:    (703) 299-3983
                                                Dennis.barghaan@usdoj.gov
                                                kimere.kimball@usdoj.gov

                                                ATTORNEYS FOR THE UNITED STATES