**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| JAMES AND KELARA GHAISAR,      )<br>Individually and as Personal Representatives   )<br>and Co-Administrators of the Estate of Bijan C. )<br>Ghaisar, Deceased,       )<br>          )<br>      Plaintiffs,    )<br>          )<br>   v.         )<br>          )<br>UNITED STATES OF AMERICA,     )<br>      Defendant.   )<br>_____ | Case No. 1:19-cv-1224 (CMH/IDD) |

**UNITED STATES OF AMERICA'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STAY**

The facts of this case are not quite as "simple" as Plaintiffs claim.  As much as Plaintiffs would like to believe this is a straightforward case, their own filings indicate that it is not; Plaintiffs listed 30 different witnesses on their exhibit list, Dkt. 54-2, and 36 exhibits for trial, Dkt. 54-1.  In fact, the parties have taken a total of 13 depositions, preserving that evidence for any eventual trial in this action.  The United States should be permitted to mount a proper and zealous defense in this case—which it cannot do if Officers Amaya and Vinyard cannot testify as to what they saw, what they heard, and what they understood on the night of the events giving rise to this action.

Plaintiffs' additional analysis about the necessity of the officers' testimony and thus the propriety of a stay both relies on an incorrect assessment of their legal burden and is belied by their own litigative actions in this Court.  For instance, Plaintiffs blithely state that the officers' testimony is inconsequential because their conduct in this action is adjudicated through an "objective" standard.  But that "objective" standard requires this Court to determine what a reasonable officer would have done in *the exact circumstances that were presented* to Officers

Amaya and Vinyard here.  In any event, were Plaintiffs correct, there would be no need for them to take the depositions of the officers that were present on the evening in question and ask them about their perceptions (but Plaintiffs did), nor would there be any basis for them to seek adverse inferences based on the officers' invocations of their Fifth Amendment rights (but Plaintiffs do).  Nor is the United States' decision to agree to a summary judgment briefing schedule—explicitly subject to this Court's ruling on this motion for a stay—at all pertinent; the very same prejudice that would befall the United States in a trial is equally applicable to summary judgment.

Moreover, the fact that Plaintiffs adamantly insist this case to proceed to trial *without* actual evidence of what was known to Officers Amaya and Vinyard is telling.  It is the United States' understanding that Plaintiffs (presumably through their counsel) have discussed the possibility of prosecution with the Office of the Commonwealth's Attorney; indeed, even as recently as this week, Plaintiffs have requested—and the United States has consented—to share certain discovery material from this case selected by Plaintiffs with the Commonwealth's Attorney to aid a decision regarding prosecution.  Yet Plaintiffs *now* suggest that waiting for resolution of a separate sovereign's decision on any criminal proceedings to allow *this* proceeding to go forward without actual evidence would somehow prejudice them, and complain that it is somehow unjust to ask them to bear that burden.

Plaintiffs are correct about one thing—this is an important case.  There is an ongoing national discussion about law enforcement practices.  Which is all the more reason to ensure that whatever judgment this Court ultimately enters in this civil action is done on a *full* record of the officers' conduct, not a rush to judgment based on Plaintiffs' preferred partial record augmented by adverse inferences.

I.     **Plaintiffs' Opposition completely ignores the serious implications stemming from the officers' invocation of the Fifth Amendment.**

Plaintiffs' Opposition (Dkt. 57) brushes aside the serious prejudice to the United States that will arise if this case proceeds on the merits as a result of the officers invoking their Fifth Amendment rights. *First*, Plaintiffs state simply that an adverse inference may be drawn against the United States when the officers invoke the Fifth Amendment at trial. Opp'n at 4-5. Yet their Opposition does nothing to address the substantial risk of prejudice to the United States as described in the United States' brief, *see* Def.'s Br. (Dkt. 45) at 11-13, and seems to assume that their mere allegations, and subjective belief of, the United States' negligence here is more than sufficient to address the United States' inability to meaningfully defend itself in this case. Indeed, Plaintiffs make this particularly evident when they suggest that the United States should simply settle this matter rather than seek a stay in order to allow the merits of this case to be decided on a full record of evidence. *See* Opp'n at 2, 7.

The cases Plaintiffs cite are no help in this regard. In *Rad Services, Inc. v. Aetna Casualty and Surety Co.*, the Third Circuit considered whether a party "may introduce as substantive evidence the fact that non-party agents [of the opposing party] claimed the Fifth Amendment privilege against compelled self-incrimination in response to questioning regarding their employment and the crucial facts at issue." 808 F.2d 271, 272 (3d Cir. 1986). Similarly, in *Brink's Inc. v. City of New York*, the Second Circuit considered whether the invocation of the Fifth Amendment by Brink's employees was competent evidence. 717 F.2d 700, 710 (2d Cir. 1983). That point—that the silence of non-party employees can be imputed to party-employers and that the opposing party can comment on such silence—is not in dispute here. *See* Def.'s Br. at 11. These cases do not address what *is* disputed here, that is, whether the United States can put forward a meaningful defense in this case without the officers' testimony.

*Second*, Plaintiffs accept, without question, that the Court will draw adverse inferences from the officers' testimonial silence.  Opp'n at 4-5.  But Plaintiffs ignore that whether the officers' invocation of their Fifth Amendment rights will result in an adverse inference is an intensive analysis that this Court must address on a question by question basis.  For instance, any adverse inference must be "relevant, reliable, and not unfairly prejudicial, confusing, or cumulative."  *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp. 2d 628, 633 (E.D. Va. 2006).  Simply because "a given inference may be relevant evidence does not mean that it is reliable evidence."  *Id.* at 634.  Rather, drawing an adverse inference from testimonial silence requires a finding that the witness had personal knowledge of the subject about which he refuses to testify.  *Id.*  "This finding of personal knowledge must itself rely on the other evidence to be presented at trial; a conclusion as to the reliability of an inference cannot derive by bootstrapping" from the "blank invocation of the privilege against self-incrimination."  *Id.* Plaintiffs make no attempt to explain how to avoid this trial-within-trial of determining whether to draw an adverse inference.

*Finally*, Plaintiffs seem to suggest that the Court need only view the video of the shooting to determine whether the officers' conduct was reasonable, because the standard is "objective" in nature.  Opp'n at 5.  This belies both the relevant authority governing this Court's ultimate analysis and the manner by which Plaintiffs themselves have litigated this case.

To be sure, Plaintiffs are correct that the relevant standard here is objective in nature.  *See Graham v. Conner*, 490 U.S. 386, 397 (1989) ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").  But that does not render evidence about what the officers saw, heard, and understood at the time of the events

4

in question *irrelevant* or *inconsequential*.  As the Supreme Court has held, "[t]he

'reasonableness' of a particular use of force must be judged from the *perspective* of a reasonable

officer *on the scene*, rather than with the 20/20 vision of hindsight."  *Id.* at 396 (emphasis added).

One court has cogently put the standard in this way:

> Reasonableness depends on the information the officer possesses
> prior to and at the immediate time of the shooting; the "knowledge,
> facts and circumstances known to the officer at the time he exercised
> his split-second judgment as to whether the use of deadly force was
> warranted."

*Derring v. Reich*, 183 F.3d 645, 650 (7th Cir. 1999) (quoting *Sherrod v. Berry*, 856 F.2d 802 (7th

Cir. 1988) (en banc)).  But Plaintiffs ask this Court to force the United States—and this Court

itself—to proceed to evaluate the propriety of the officers' decision to employ deadly force here

(whether at summary judgment or at trial) without a full comprehension of what "knowledge,

facts, and circumstances" those officers had on the night in question.

Perhaps more importantly, this evidentiary position is a new one for Plaintiffs, as they

have been litigating this case in a far different manner up until now.  Were Plaintiffs correct,

there would be no need even to depose the officers in this civil case (because their perspective is

unnecessary), and thus certainly no reason for this Court to take an adverse inference from their

constitutional decision to remain silent.  But Plaintiffs deposed both officers, and now openly

seek to have this Court not only deprive the United States of the officers' testimony, but also to

apply adverse inferences against the United States.  Moreover, Plaintiffs have asked each law

enforcement officer who was in any way connected with the events of that evening not only what

they saw or heard, but also for their own subjective views on those events.[1]

---

[1] Plaintiffs' Opposition makes no mention of the public interest in a fair criminal trial, if there
was to be one, for the officers.  Plaintiffs acknowledge that this is a "high-profile" case.  Opp'n
at 4.  But they stop there.  Plaintiffs do not address how continuing with the civil trial will protect
the integrity of the criminal process and safeguard the constitutional rights of Officers Amaya

**II.     Plaintiffs' argument that the public interest favors a civil trial, even without the officers' testimony, rings hollow.**

Plaintiffs suggest that this case is part of a "broader effort to address an ongoing harm to the public," namely, alleged police misconduct.  Opp'n at 7.  But as several courts have held, that interest is not served where the public cannot also hear from the officers.

Because both officers will invoke the Fifth Amendment at a civil trial, "the record will be incomplete."  *Ruszczyk as Trustee for Ruszczyk v. Noor*, 349 F. Supp. 3d 754, 765 (D. Minn. 2018).  "Such an undeveloped record goes against the public's strong interest in police misconduct[.]."  *Id.* (citation and internal quotation marks omitted).  While Plaintiffs assert that this case is part of a larger effort on police reform, even if that is so, there is no benefit to that effort for a judgment to be reached here on only a partial record.  *Id.*  The officers' invocations of their Fifth Amendment rights "will not advance the parties or public towards this goal because the record will be incomplete."  *Id.*

Here, it is entirely unclear how a civil trial where the officers cannot testify, "especially if resolved in Plaintiffs' favor, will best fulfill the Court's important role in holding police departments accountable for their officers' misconduct."  Opp'n at 7.  Plaintiffs' position that the public interest is served even when the officers cannot testify is all the more puzzling when contrasted against their concern about the availability of eyewitness testimony if the case were stayed.  *See* Opp'n at 6-7.  In other words, Plaintiffs believe that eyewitness testimony is

---

and Vinyard, especially in light of case law that holds the interests in civil cases must give way where there is potential for criminal liability.  *See* Def.'s Br. at 18.  Moreover, the fact that this case is "high-profile" does not suggest in any way that it should proceed without the benefit of actual evidence of what the officers knew at the time of the shooting.  If anything, the "high-profile" nature of this case should weigh in favor of ensuring that this case is decided based on actual facts rather than mere inferences.

important in this case—yet want to proceed to trial without the testimony of the two most important eyewitnesses.

"Just as the Court, the parties, and the nonparties, the public has a paramount interest in preserving the indispensable linkage between justice and truth and fairness." *Ruszczyk*, 349 F. Supp. 3d at 765. That interest is not served in a civil trial where Officers Amaya and Vinyard cannot testify.

**III.     Plaintiffs' assertion that the United States has delayed this case is misleading.**

Plaintiffs claim that the United States has somehow prolonged this case for three years, but that ignores the reality of these proceedings. *First*, that claim ignores that the FBI spent two years undertaking an exhaustive criminal investigation, which ultimately did not lead to criminal charges by the Department of Justice. It also ignores the fact that Plaintiffs voluntarily dismissed the first civil action they brought regarding this incident because they had failed to be appointed as administrators of the estate as required by Virginia law and thus had no authority to bring the action. It further ignores that this Court dismissed the United States from the second action that Plaintiffs brought because they failed to take the steps needed to cure the jurisdictional deficiencies in their action. It is unclear how Plaintiffs can assert that the United States should bear the burden of Plaintiffs' own repeated failure to file a lawsuit over which this Court has jurisdiction.

*This* case was filed on September 19, 2019. (Dkt. 1). Discovery was originally set to close on May 15, 2020, but *both* parties joined in requesting enlargements of time because of the COVID-19 pandemic. *See* Def.'s Br. at 5. To suggest that the United States has dragged its feet in this case does not accurately describe the United States' conduct here.

Nor is there any merit to Plaintiffs' criticism that the United States waited too long to assert its interest in a stay. If anything, the timing of the United States' motion allowed Plaintiffs

to complete both written and oral discovery, and thus assisted in preserving the eyewitness testimony that Plaintiffs maintain here is so essential to this case (other than the two officers whose conduct is the gravamen of their claims); indeed, had the United States sought a stay at the commencement of this action, Plaintiffs would have undeniably bemoaned the prospect of being prevented from securing fact discovery.  And at the beginning of discovery in this case, there was every reason to believe that the Fairfax County Commonwealth's Attorney would have made a prosecutorial decision by this point.  It thus made perfect sense to accomplish the discovery that could be done, consistent with the ethos of this Court's docket.  But now that the end of discovery is here, with the prospect of a criminal prosecution still looming, the prejudice to the United States is no longer speculative, it is real.

## **CONCLUSION**

For the foregoing reasons, and the reasons stated in its opening brief, the United States respectfully requests that this Court grant its motion to stay the proceedings until the Fairfax County Commonwealth's Attorney has made a decision whether to bring criminal charges against Officers Amaya and Vinyard, and if charges are brought, until the completion of the criminal proceedings.

Dated:  August 27, 2020                    Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By: _____/s/_____
DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
KIMERE J. KIMBALL
MEGHAN LOFTUS
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue

Alexandria, Virginia 22314
Tel:     (703) 299-3891/3763/3757
Fax:     (703) 299-3983
dennis.barghaan@usdoj.gov
kimere.kimball@usdoj.gov
meghan.loftus@usdoj.gov

ATTORNEYS FOR THE UNITED STATES