1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF VIRGINIA
2         ALEXANDRIA DIVISION

3
JAMES GHAISAR AND KELARA GHAISAR,)
4 INDIVIDUALLY AND AS PERSONAL      )
  REPRESENTATIVES AND               )
5 CO-ADMINISTRATORS OF THE ESTATE   )
  OF BIJAN C. GHAISAR, DECEASED     )
6                                   )
7         VS.                       )        1:19-CV-1224
                                    )
                                    )   ALEXANDRIA, VIRGINIA
8                                   )     AUGUST 28, 2020
                                    )
9 UNITED STATES OF AMERICA          )
  _____ )
10

11

12

13

14

15 _____

         **TRANSCRIPT OF MOTION HEARING**
16 **BEFORE THE HONORABLE CLAUDE M. HILTON**
      **UNITED STATES DISTRICT JUDGE**
17 _____

18

19

20

21

22

23

24 **Proceedings reported by stenotype, transcript produced by**

25 **Julie A. Goodwin.**

# A P P E A R A N C E S

FOR THE PLAINTIFFS:
      HARRIS, WILTSHIRE & GRANNIS LLP
      By:  MR. THOMAS G. CONNOLLY
      MR. ROY L. AUSTIN, JR.
      1919 M Street NW
      Eighth Floor
      Washington, D.C.  20036
      202.730.1300
      tconnolly@hwglaw.com
      raustin@hwglaw.com


FOR THE DEFENDANT:
      UNITED STATES ATTORNEY'S OFFICE - CIVIL DIVISION
      By:  MR. DENNIS C. BARGHAAN, JR.
      MS. KIMERE J. KIMBALL
      MS. MEGHAN E. LOFTUS
      Assistant U.S. Attorneys
      2100 Jamieson Avenue
      Alexandria, Virginia  22314
      703.299.3700
      dennis.barghaan@usdoj.gov
      kimere.kimball@usdoj.gov
      meghan.loftus@usdoj.gov


OFFICIAL U.S. COURT REPORTER:
      MS. JULIE A. GOODWIN, CSR, RPR
      United States District Court
      401 Courthouse Square
      Eighth Floor
      Alexandria, Virginia  22314
      512.689.7587

1    (AUGUST 28, 2020, 10:20 A.M., OPEN COURT.)

2          THE COURTROOM DEPUTY:  Civil Action Number

3    2019-CV-1224, *Ghaisar versus United States of America*.

4          MR. CONNOLLY:  Your Honor, good morning.

5          THE COURT:  Good morning.

6          MR. CONNOLLY:  Tom Connolly with Roy Austin, my

7    partner, on behalf of the Ghaisar family.

8          MR. BARGHAAN:  Good morning, Your Honor.  Assistant

9    United States attorney Dennis Barghaan.  With me today is Meg

10   Loftus and Kimere Kimball, my assistant U.S. attorney

11   colleagues, and we are here, of course, on behalf of the United

12   States.

13         THE COURT:  All right.

14         MR. BARGHAAN:  Your Honor, this morning -- this

15   morning the matter comes before the Court on the United States'

16   motion for stay.  The matter has been fully briefed, and I will

17   not waste the Court's time rehashing all of that that is in

18   those papers.  I will simply provide an outline of our

19   position.

20         Your Honor, the final -- the following facts are

21   completely and unequivocally undisputed.  Officers Amaya and

22   Vinyard, whose actions are the gravamen of this action, have

23   universally invoked their Fifth Amendment rights against

24   self-incrimination and refused to answer any questions about

25   their perceptions or their actions on the night in question.

1    And they've indicated they will continue to do so, so long as

2    the prospect of prosecution by the Fairfax County

3    Commonwealth's Attorney remains live.

4            It can only -- it cannot be disputed that the facts

5    of their knowledge, what they saw, what they heard, what they

6    believed at the time in question, are relevant and that they --

7    in fact, they are the key evidence in this case.

8            Second -- or third, excuse me, plaintiffs have

9    indicated quite clearly that they intend not only to proceed on

10   the record developed without this key testimony, but they also

11   seek to have adverse inferences taken against the United States

12   as a result of the officers' invocation of their Fifth

13   Amendment rights.

14           Fourth, by dismissing their independent civil

15   action against those officers, the plaintiffs have eliminated

16   any possible incentive for those officers to testify about

17   their actions on the night in question in this civil case.

18           And finally, the United States, the only civil

19   defendant remaining in these civil actions, and the party who's

20   seeking the stay here, has absolutely no control over the

21   prosecutorial decision.

22           This is that same unique situation in which a

23   separate sovereign who has been receiving information from my

24   colleagues in aid of that prosecutorial decision controls the

25   ability of the United States to mount a zealous defense.   And

1   of course this is no knock at -- in any way, shape, or form at

2   Fairfax County.  They're doing their job, and we take no slight

3   against them for that.  But we ask for what is a rather

4   reasonable remedy to cure the prejudice to the United States.

5           Now, the plaintiffs have a ready answer to this

6   question:  Too bad.  They're your employees.  You hired them,

7   so you bear their consequences.

8           That's wrong.  The doctrine of respondeat superior

9   that applies to the Federal Tort Claims Act, and applies to

10  corporations throughout the Commonwealth applies to their own

11  actions, not to their litigative decisions.

12          And although the plaintiffs are correct that there

13  is a video recording in this case, that video recording only

14  goes so far.  It can assist this course in -- Court engaging in

15  the objective analysis that it has to undertake, but it may not

16  tell the entire story.  In short, it is no replacement for what

17  was in the officers' heads at the time of the events in

18  question.

19          What we ask Your Honor here is very reasonable, a

20  stay until that prosecutorial decision-making process has come

21  to its terminus.  We have engaged in discovery in this case to

22  preserve all of the eyewitness testimony that the com -- that

23  the plaintiffs here are worried about.

24          Instead of seeking a stay at the very beginning of

25  this case, we got our noses into it.  We did the discovery,

1  just like this Court expects us to do.  And now, even though

2  there was every reason to believe that the Fairfax County

3  Commonwealth's attorney would have made a decision by now, we

4  are at the point where the prejudice to the United States is no

5  longer speculative.  It is real.  And we ask the Court for a

6  stay, and I thank the Court for its time this morning.

7         THE COURT:  Well, how long -- this whole issue is a --

8  is a little bit troubling in the sense that you have no control

9  over Fairfax County.  They may be investigating this case for

10 the next ten years.

11        MR. BARGHAAN:  Theoretically, sure --

12        THE COURT:  I have --

13        MR. BARGHAAN:  -- that's possible.

14        THE COURT:  I have cases come here from your -- well,

15 not your side of the office, but the other side of your office.

16 They're investigating these criminal cases five, six, seven,

17 eight, nine years.

18        MR. BARGHAAN:  And we're not asking for a stay of

19 that -- that amount.  We know that from public statements, the

20 Commonwealth's attorney says they're moving forward with their

21 investigation.  They're not going slowly.

22        Our office has been recused from any criminal

23 involvement in this case from the very beginning.  And thus, we

24 can't reach out and ask them about that.

25        And so, if the -- if Your Honor is concerned about

1    that prospect, which we think is highly theoretical, then

2    there's nothing to say that you could enter a stay and we

3    revisit them -- the notion in a certain amount of time.

4            The -- the mere possibility, the mere speculation

5    that it could be ten years, and I have no reason to believe

6    that it would, is no justification from prejudicing the only

7    civil defendant left in this -- in these proceedings.

8            THE COURT:  Well, the prejudice goes both ways here.

9    There's a balance to the -- the prejudice is, I believe, which

10   is what I'm trying to feel out here.

11           Have you had any discussion with those people in

12   Fairfax as to --

13           MR. BARGHAAN:  We have not.  We have not.

14           THE COURT:  Well, shouldn't we have some idea of what

15   they're doing and when they're going to make up their mind

16   before I could even make any kind of a decision?

17           MR. BARGHAAN:  I mean, if the Court wants to issue an

18   order to ask them to -- to make that -- make that explanation.

19   It's not my place to ask a separate sovereign in a case in

20   which my office has been recused - well, what's going on in

21   that -- in that criminal investigation?

22           THE COURT:  Yeah, but it's affecting your civil case.

23           MR. BARGHAAN:  It certainly is.  There's no doubt

24   about that.

25           THE COURT:  Well, you would think you would have an

1  interest in moving them along.

2      MR. BARGHAAN:  I would, Your Honor, but think about it

3  this way.  If we were, given the fact that we are recused from

4  that criminal prosecution, were to call up the -- the Fairfax

5  County Commonwealth's attorney and say, What's going on?  Why

6  don't you move that along?  Then -- then people would cry --

7      THE COURT:  Well, why don't --

8      MR. BARGHAAN:  -- from the mountaintops that we were

9  trying to interfere.

10     THE COURT:  Why not just call them and say, Are you

11 making an investigation?  Are you close to making a decision?

12     MR. BARGHAAN:  I think -- you know, Your Honor, we

13 take our ethical obligation seriously, and we do not want there

14 to be any implication that we are pushing the Fairfax County

15 Commonwealth's attorney one way or the other.

16     THE COURT:  Okay.

17     MR. BARGHAAN:  I certainly don't want that.

18     THE COURT:  Okay.

19     MR. BARGHAAN:  Thank you, Your Honor.

20     THE COURT:  I understand.

21     MR. CONNOLLY:  Your Honor, the Government's entire

22 argument is premised on some hypothetical unfairness to it.  I

23 want to put that in context.

24         On November 17, 2017, Bijan Ghaisar was driving

25 down the Parkway.  He was a 25-year-old accountant.  High

1  school -- went to Langley High School; played football,

2  lacrosse.  He worked for his father, and he was expecting -- he

3  was expecting to have dinner with his father that night.  He

4  was rear ended on the Parkway.  It wasn't his fault.

5         There was no damage or injury to any human being.

6  When he left the scene of that accident, United States Park

7  Police officers pulled over -- pulled him over, ran up to him,

8  and stuck a gun in his face.  And Bijan, who was phobically

9  afraid of guns, drove slowly away.

10        The second stop, same thing.  They put a gun right

11  in his face.  This is a guy who's the victim of a hit and run.

12  He drove away slowly.

13        These officers, they decide at that point they're

14  not going to be defied, so at the next stop they shot at him

15  ten times.  Four times they hit him in the head.

16        That night Park Police detectives came to the

17  family, his mother and father's house, Kelly and James Ghaisar.

18  And they said, Your son has been in a shoot-out, suggesting

19  that he was hit by cross fire.  You must get to the hospital

20  immediately.

21        So they immediately went to the hospital, and they

22  called their daughter, Negeen, and her husband, Kouros, and

23  said, You must get down here immediately.

24        When they got to the hospital, the Park Police

25  officers there treated them in the most inhumane fashion

1  possible.  They did not have the common decency to say, your

2  son was shot by the Park Police.

3           The family learned how their son was shot by being

4  in the hospital room waiting room and seeing on television a

5  news report with their son's Jeep bullet ridden on the side of

6  the road.  That's how they learned from the Park Police.

7           At the hospital, they were told that they could not

8  see their dying son en masse because he was a perp, or that he

9  was evidence of a crime.

10          When I later asked Lieutenant Dillon from the Park

11 Police, who wrote the memo that said this family could not

12 visit their dying son, what -- what was he a perp of?  What did

13 Bijan do that justified detainment of him by the United States

14 Park Police?

15          His answer was, I don't know.

16          But you wrote the memo, Lieutenant Dillon.  Let's

17 look at this video.  Tell me what crime Bijan Ghaisar committed

18 that you can see on this video that suggested that he should

19 have been treated like this, treated like a perp, and have his

20 family treated like this.

21          When the Park Police would not let the family visit

22 their dying son and brother, they asked for a minister to go

23 visit.  The minister happened to be a female.  And as she went

24 to try to say some prose over Bijan's dying body, the Park

25 Police said, You cannot touch him.  He's a Muslim.  Women

1  cannot touch Muslim men.

2           Bijan was not a Muslim.  He was no more of a Muslim

3  than I am.

4           We asked the United States government to

5  investigate this case in a criminal fashion.  For two years

6  they refused to meet with his family to tell them what was

7  going on.

8           Tell us what is going on in your investigation.

9  It's your obligation as prosecutors to tell us.

10          No, no, no.

11          But we did extract one promise.  That promise was,

12  before you announce publicly what you're going to do in the

13  criminal charges, will you sit down with the family and tell

14  them what you're going to do and explain your decision?

15          And the answer is, Yes, we promise we'll do that.

16          Well, on a Friday of last November, we get a call

17  at about 3:40 in the afternoon saying, Oh, by the way, we're

18  not going to bring charges here, the United States says to us.

19  And this is before Austin and I.  But we couldn't relay that

20  news to the Ghaisar family because at 4:00 o'clock they called

21  a press conference, and they said -- the Ghaisar family learned

22  that the United States government was not going to bring

23  charges in their son's case because they saw a press conference

24  done by the United States.  Not a -- not honoring the promise

25  that they would tell them first.

1    So we sued the United States in this court, and we

2 asked for the names of the police officers who murdered their

3 son.  And we were fought every step of the way, until finally

4 this Court ordered the names of the police officers to be

5 released to us so we could try to do justice for this family in

6 this case.

7    Now, the Government says it would be unfair, unfair

8 for us to move forward.  We're almost three years in this case,

9 Judge.  The reason the Government has found themselves in the

10 situation they found themselves in is because they have fully

11 embraced the malicious actions of the police officers in this

12 case.  This is a shame.  Okay?

13    Now, the Government's defense could have been

14 there's a line that we will not cross.  We will not accept

15 certain behavior on the part of police officers.  We will not

16 defend it.

17    But no, no.  In this case, they defended every

18 single action.  They've taken a page from the playbook of every

19 municipality that gets sued for police misconduct.  They say,

20 It's not our fault.  It's not our fault.

21    By the way, wink, wink, Bijan had marijuana in his

22 vehicle.  The playbook is to dirty up the victim and defend to

23 the death any conduct of the police officers.

24    And you'll see this in the case at some point,

25 Judge, when you see their expert witness, their so-called

1  expert witness who has testified that these police officers may

2  have been justified by shooting Bijan in the head during the

3  very first stop.  They certainly were justified, he says, in

4  the second stop after he left them.  They would have been

5  justified in murdering this guy.  Okay?  They have defended the

6  conduct of the police officers to its core.

7        Now, it's because of that that they find themselves

8  in the situation they find themselves in now.  The defense

9  could have been, you know what?  This is not how we train these

10 officers.  This is not how this is done, and we are not as a

11 part of the Department of Justice going to stand for this kind

12 of conduct.

13        But that's not the defense here.  The defense is,

14 Bijan deserved everything he got.  Okay?  That's why they find

15 themselves in the situation they are right now.

16        So, we don't know what the Commonwealth's attorney

17 is going to do.  I will tell you that, you know, just frankly,

18 the Commonwealth's attorney has made the same promise to us and

19 the family that the Department of Justice dishonored, which is,

20 We will let you know in advance.  But I will tell you, we have

21 not been told what's going to happen with the Commonwealth's

22 Attorney's office.

23        If, however, they were indicted tomorrow, Judge,

24 the United States has already said publicly it's going to come

25 in and remove the case from Fairfax County into this court, and

1  it's going to seek to immunize these officers from criminal

2  prosecution under the supremacy clause of the United States.

3  That's a very complicated litigation.  It may actually land on

4  your desk at some point.  But if that happens, that doesn't get

5  heard until December or January.  And whatever party loses that

6  case is assuredly going to appeal to the United States before

7  the Fourth Circuit.

8             So the stay they talk about -- if the indictment

9  happened tomorrow, the stay they're talking about is at least a

10 year.  Okay?

11            But let me throw something else at you.  That's if

12 Mr. Descano's office indicts tomorrow.  There is no statute of

13 limitations in Virginia.  This could, as you suggested, go on

14 for another five or seven years.

15            But assume for a moment that tomorrow the

16 Commonwealth Attorney's office in Fairfax County says, we're

17 going to decline prosecution.  Okay?  Well, guess what?

18 There's an election in November, and there may be a new

19 Department of Justice come January.  And in that case this new

20 Department of Justice may say, the decisions that our

21 predecessors made in terms of not prosecuting these officers

22 were wrong.  They were based on politics, and we're going to

23 reexamine this case.

24            And circumstances like that with no statute of

25 limitations, these officers would never testify at a trial in

1  this case.  Even if Steve Descano's office tomorrow declined

2  prosecution, we're going to find ourselves in this situation

3  for years on end.

4          The problem, the unfairness that the Government has

5  complained of is entirely of their own making.  We have no

6  control over what these officers are going to do, whether they

7  would ever testify at trial, whether Mr. Descano's office is

8  going to prosecute or not.  We're going to be in the same

9  situation a year from now.  We're going to look at ourselves

10  and say, Look, are we honoring the description of the front of

11  this building?  Justice delayed is justice denied.

12          I've given two options, Judge, before we even have

13  to get to the issue of whether a stay is appropriate here.

14  One, you've given us a date to file our summary judgment motion

15  briefs.  I think, frankly, in the 30 years of practice, this is

16  the strongest summary judgment motion we'll ever file.  And I

17  think we'll prevail.

18          There is no reason whatsoever to stop that process.

19  Let us file our summary judgment brief.  Let us lay this out

20  for you.  And if we prevail there, then the movants -- the stay

21  is mooted.

22          And second, I've suggested to you last week, we

23  have been ordered to settlement conference.  Now, Judge, I've

24  appeared in front of you many times.  You know I'm not daunted

25  by the prospects of going to trial.  But I also understand that

1   this, in light of the pandemic and in light of everything else,

2   that this Court has a backlog.  And I've said to this Court and

3   I've said to Judge Davis, We will settle this case under

4   reasonable circumstances.  That's unusual for me.  Okay?  But

5   we will settle it.  But we've been ordered to settle it.

6   They've been ordered to settle it, and they don't have -- and

7   they still two months later don't have the authority to even

8   discuss this.

9        And one of the things that they said last week was,

10  Well, this -- the prospect of a stay is an impediment for

11  actually getting to a settlement table because people at the

12  Department of Justice think if there's a stay there's really no

13  reason to even have discussions of settlement.

14       Again, we were ordered to settle it.  It wasn't a

15  suggestion.

16       So, I've said enough, perhaps too much, but I don't

17  think there's any justification for a stay in the matter

18  whatsoever.

19       MR. BARGHAAN:  Your Honor, this is a court of law.

20  It's not a theater.  It's not a press conference.  And I'm not

21  going to look at my colleague in anger, not going to take shots

22  at his abilities at zealous advocacy.  My job is to represent

23  the United States.  I have done it for 20 years.  And my job is

24  to represent them when there is a Rule 11 basis to do so.  And

25  the mere fact that my colleague may think that we don't have a

1  very good defense here doesn't change my obligation.  So I've

2  said enough about that.

3          My colleague went through the facts of this case,

4  from their perspective, obviously, quite a great deal.  That's

5  a red herring when it comes to this motion.

6          I certainly do not begrudge my colleague's clients

7  and their feelings about what happened here.  It's an honor to

8  represent the United States, but sometimes it's very difficult.

9  And these circumstances are difficult.  There's no doubt about

10  it.  I don't want to be here.  My colleagues don't want to be

11  here.  But that's our job.  But the facts don't -- don't --

12  their -- their spin on the facts, their position on the facts,

13  doesn't change our position on a stay.  It's a red herring.

14          My colleague's belief that we should try summary

15  judgment first and see what happens.  The summary judgment

16  motion is the merits just as much as the trial is the merits.

17  It's almost as if you have a basketball team, and there's four

18  players on one side and five on the other, and the fifth player

19  can't get there for some reason, you know, without their

20  control.  And the other side says, Well, let's just play the

21  game.  Let's see what happens.  And if we win, well, we win.

22  That puts the cart before the horse.

23          I spoke to Your Honor about the settlement

24  situation last -- last week.  As Your Honor knows, no Court can

25  order a party to settle, period.  We know the amount that the

1 party on night -- on my right here wants to settle this case.

2 I don't have authority to pay that amount, period.  And so what

3 we did was to not waste the magistrate judge's time or the

4 family's time.  And when we found out that, we informed them of

5 that.  So if that's a mistake, if it is a mistake to preclude

6 the wasting of time, then I'll apologize.

7           Your Honor, a stay, even of a short amount, to see

8 whether or not a prosecutorial decision is forthcoming is the

9 correct decision.  It ensures that this case, which is

10 important from everybody's perspective, is decided on a full

11 record is appropriate.

12           I again thank the Court for its time.

13      THE COURT:  All right.  Well, a stay might be

14 appropriate.  There was some indication that there was even any

15 kind of expeditious work going on, or some kind of time frame

16 that a decision would be made.  And sometimes that doesn't even

17 work out.  And I've given stays in cases that people are trying

18 to reach decisions about things, and they just keep dragging on

19 and dragging on.

20           In this situation, I have really nothing to go on.

21 There's -- there's no indication that there's any urgency on

22 the part of Fairfax County to do anything, or if they're going

23 to do anything.  From what I can see here, it's just as likely

24 they'll do nothing as to do something.  I mean, who knows?  I

25 have absolutely no idea.  And it seems to me that I've got to

1  balance out the Government's right to have witnesses that may

2  be able to testify against the plaintiffs' right to proceed

3  with their case, and I just don't have any justification here

4  to enter a stay.  There's no likelihood that any reasonable

5  period of time would have any effect whatsoever.  And for those

6  reasons, the motion for stay will be denied.

7          MR. CONNOLLY:  Your Honor, good day.  Thank you.

8          THE COURT:  Thank you.  And that takes care of our

9  docket.

10          Very well.  We'll adjourn until Monday morning at

11  9:30.

12          THE LAW CLERK:  All rise.

13          (PROCEEDINGS CONCLUDED AT 10:44 A.M.)

14                              -oOo-

15

16

17

18

19

20

21

22

23

24

25

1  UNITED STATES DISTRICT COURT    )

2  EASTERN DISTRICT OF VIRGINIA    )

3

4          I, JULIE A. GOODWIN, Official Court Reporter for

5  the United States District Court, Eastern District of Virginia,

6  do hereby certify that the foregoing is a correct transcript

7  from the record of proceedings in the above matter, to the best

8  of my ability.

9          I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action in

11  which this proceeding was taken, and further that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14          Certified to by me this 24TH day of SEPTEMBER,

15  2020.

16

17

18

19                    /s/
                      JULIE A. GOODWIN, RPR
20                    Official U.S. Court Reporter
                      401 Courthouse Square
21                    Eighth Floor
                      Alexandria, Virginia  22314
22

23

24

25

Julie A. Goodwin, CSR, RPR

8.28.20