**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| JAMES AND KELARA GHAISAR, | ) | |
| Individually and as Personal Representatives | ) | |
| and Co-Administrators of the Estate of Bijan C. | ) | |
| Ghaisar, Deceased, | ) | |
| | ) | Case No. 1:19-cv-1224 (CMH/IDD) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

---

**UNITED STATES OF AMERICA'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR RECONSIDERATION OF ITS MOTION TO STAY THE**
**PROCEEDINGS**

Pursuant to Federal Rule of Civil Procedure 54(b) and Local Rule 7, the United States of America respectfully requests that this Court reconsider its decision on the United States' Motion to Stay the Proceedings, in light of the criminal indictments issued days ago in Fairfax County Circuit Court against two Park Police officers for the same conduct at issue in this case.

## INTRODUCTION

The United States of America previously moved to stay this action. That motion argued that the United States faced significant prejudice because the oral testimony of Officers Amaya and Vinyard—whose actions are at the heart of Plaintiffs' claims—was unavailable to this Court. Both officers, fearing the *potential* for criminal prosecution in Fairfax County, had invoked their Fifth Amendment rights to silence in their depositions in this matter, and likely would continue to do so at trial. This Court denied that motion, stating from the bench that there was no firm deadline for the Fairfax County Commonwealth's Attorney to conclude its investigation and

make a prosecutorial decision; indeed, this Court noted that "a stay might be appropriate" if "there was . . . some kind of time frame that a decision would be made."

This Court's concern no longer exists, because "a decision" *has* now "be[en] made."  On October 15, 2020, a grand jury sitting in the Fairfax County Circuit Court indicted Officers Amaya and Vinyard with one count each of involuntary manslaughter and reckless discharge of a firearm.  These indictments remove the specter of doubt about when the Fairfax County Commonwealth's Attorney would conclude its investigation.  Instead, these indictments now provide a more defined timetable for resolution of any criminal action against the officers.

Respectfully, in light of the indictments, this Court should reconsider its previous denial of the United States' motion to stay.  All of the reasons that the United States outlined as meriting a stay, *see* Def.'s Mem. Stay (Dkt. 45), are still present, and have even greater force now that Officers Amaya and Vinyard face criminal charges.  Recognizing the substantial prejudice to organizational defendants who are deprived of key testimony because of individual employee's Fifth Amendment rights, courts have routinely granted stays where, as here, those individual employees have been indicted.  Although organizational defendants have no Fifth Amendment rights, their liability is significantly impacted by individual employees who *do* have such rights and are facing a concrete threat of criminal penalties.  Because the United States finds itself in exactly that position in this case, where both officers are indicted on two felony charges, it respectfully requests that this Court reconsider its motion to stay the proceedings in this case.

Plaintiffs, through counsel, have advised that although they do not consent to a stay of summary judgment proceedings, they would consent to a stay of any trial in this civil action, currently scheduled for November 16-18, 2020, with the understanding that the parties would

update the Court in March 2021 at a scheduled status hearing regarding the continued need for a stay.

**BACKGROUND**

The United States presumes familiarity with the background of the case, *see* Def's Mem. Stay at 3-8, and recounts only facts relevant for the instant motion.

The United States moved to stay the proceedings in this case pending the then-potential criminal prosecution of Officers Amaya and Vinyard by Fairfax County, Virginia, for the shooting death of Bijan Ghaisar on November 17, 2017.  Mot. to Stay (Dkt. 44).  The United States argued that a stay was appropriate in this case because (1) it would be substantially prejudiced if it was forced to defend this action without the testimony of Officers Amaya and Vinyard, who had invoked the Fifth Amendment in response to questioning at their depositions and likely would continue to do so at trial; (2) there was a low risk of prejudice to Plaintiffs in delaying the proceeding until after the Fairfax County Commonwealth's Attorney had decided to prosecute, since discovery had concluded; (3) the Court's convenience favored a stay, where Plaintiffs were likely to seek several adverse inferences from the officers' testimonial silence, which the Court would have to assess individually before ruling on whether it decided to exercise its discretion to draw the inference; and (4) the public has an interest in having this case decided on a full record.  *See* Def.'s Mem. Stay at 10-18; Reply (Dkt. 59) at 3-7.  Plaintiffs opposed the motion.  Opp'n Stay (Dkt. 57).

This Court heard argument on the motion on August 28, 2020.  After hearing from both parties, the Court denied the United States' motion from the bench.  Minute Entry (Dkt. 60); Order (Dkt. 61).  In its ruling, the Court reasoned that "a stay might be appropriate" if "there was some indication that there was even any kind of expeditious work going on, or some kind of time

frame that a decision would be made." Hr'g Tr. (Dkt. 95) at 18:13-16.  But there was no

indication any decision would be forthcoming, and the Court recognized that it had to "balance

out the Government's right to have witnesses that may be able to testify against the plaintiff's

right to proceed with their case." *Id.* at 19:1-3.  At that time—where there were no indictments

and no indication of when a prosecutorial decision was going to be made—the Court concluded

that there was no justification to enter a stay because there was only the possibility of criminal

charges. *Id.*

        The parties filed their summary judgment motions (Dkts. 68 and 75), and briefing on both

motions was completed on October 15, 2020.  In their motion for partial summary judgment,

Plaintiffs requested that this Court draw adverse inferences about the officers' subjective beliefs

about whether Bijan Ghaisar posed a threat to officer or public safety.  Pls.' Mem. MSJ (Dkt. 69)

at 24-25.  Simultaneously, however, Plaintiffs—in sharp contrast to their position before this

Court in opposing a stay, *see* Opp'n Stay at 5—argued that the United States was not entitled to

summary judgment because "it has put forth no facts to show the officers *actually* believed

deadly force was necessary." Pls.' Opp'n to MSJ (Dkt. 97) at 12 (emphasis added).

Additionally, Plaintiffs urged this Court to "ignore" any facts based on the officers' statements.

*Id.* at 13-17.  A hearing on the cross-motions for summary judgment is currently scheduled for

October 23, 2020, *see* Dkt. 51; however, contemporaneously with this motion, the United States

is also moving to continue the summary judgment hearing so that the Court may first decide

whether a stay is appropriate before considering the parties' extensive summary judgment

briefing.

        On October 15, 2020, a grand jury sitting in the Fairfax County Circuit Court indicted

Officers Amaya and Vinyard each with one count of involuntary manslaughter and one count of

reckless discharge of a firearm.  Press Release, Commonwealth's Attorney Descano Official

Statement Announcing Indictments in the Bijan Ghaisar Case (Oct. 15, 2020)

(https://www.fairfaxcounty.gov/commonwealthattorney/commonwealths-attorney-descano-

official-statement-announcing-indictments-bijan-ghaisar-case).  Both counts are felonies.

## ARGUMENT

As the Fourth Circuit has held, a district court has the discretion to reconsider its own

interlocutory orders prior to the entry of final judgment and is not bound by the stringent

standards attending post-judgment motion pursuant to, for example, Federal Rule 59.  *See Am.*

*Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); *see also Fayetteville*

*Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir.1991) ("An interlocutory

order is subject to reconsideration at any time prior to the entry of a final judgment.");  *cf.* Fed. R.

Civ. P. 54(b) (providing that interlocutory orders that resolve fewer than all claims are "subject

to revision at any time before the entry of [final] judgment").  This power is committed to the

discretion of the district court.  *See Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460

U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the

discretion of the district judge").

In light of the indictments charging Officers Amaya and Vinyard with involuntary

manslaughter and reckless discharge of a firearm for the events of November 17, 2017, this

Court should reconsider its previous order on the United States' motion to stay.  This Court has

inherent authority to grant a stay.  *See Landis v. N. American Co.*, 299 U.S. 248, 254 (1936) ("the

power to stay proceedings is incidental to the power inherent in every court to control the

disposition of the causes on its docket with economy of time and effort for itself, for counsel, and

for litigants.").  While the Fourth Circuit has not explicitly endorsed any particular factors for a

court to consider when ruling on a motion to stay, consistent with case law in other circuits district courts in the Fourth Circuit have considered: whether the parallel proceedings are related and involve substantially similar issues; the burden, including any potential prejudice that any particular aspect of the proceedings may impose on defendants; the interest of plaintiffs in proceeding expeditiously with the litigation, and the potential prejudice to plaintiffs of a delay; the interests of third parties; the convenience of the court; and the public interest. *See Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 530-31 (S.D. W.Va. 2005) (surveying case law across circuits).

Critically, however, there is no longer a mere *threat* of indictment; it is real. This Court is no longer faced with its concern about the prospect of an unending criminal investigation by Fairfax County. The indictments of Officers Amaya and Vinyard only heighten the prejudice to the United States if this civil action were to continue, for the reasons discussed below.

### A. The substantial overlap between this civil action and any potential criminal action favors a stay.

The threshold issue of whether the parallel criminal and civil proceedings are sufficiently similar such that the proceedings are related is met here. *See* Def.'s Mem. Stay at 10. The indictments of Officers Amaya and Vinyard charge each with one count of common law involuntary manslaughter, punishable under Virginia Code § 18.2-36, and one count of reckless discharge of a firearm in violation of Virginia Code § 18.2-56.1(A1), for the death of Bijan Ghaisar arising from the shooting incident on November 17, 2017. In this suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671 *et seq.,* Plaintiffs bring a claim for wrongful death of Bijan Ghaisar, on behalf of his estate, also for the shooting incident on November 17,

2017. *See* Pls.' Mem. MSJ (Dkt. 69) at 18.[1]  As both the criminal and civil actions relate to the

November 17, 2017 shooting incident, this threshold nexus is easily satisfied.

>    **B.  The indictments make a timeline to resolution of the criminal charges more**
>    **concrete, as constitutional and statutory speedy trial rights circumscribe the**
>    **timing of trial.**

During the hearing on the United States' motion to stay, this Court expressed concern

that there was no limitation on the amount of time Fairfax County could spend investigating this

case, making a stay inappropriate here.  As this Court stated in its ruling denying the motion, "a

stay might be appropriate" if "there was some indication that there was even any kind of

expeditious work going on, or some kind of time frame that a decision would be made. . . .

There's no likelihood that any reasonable period of time would have any effect whatsoever."

Hr'g Tr. at 18:13-16, 19:4-5 (Aug. 28, 2020).

With the issuance of these indictments, however, this Court's concern no longer exists.

Even if the criminal proceedings may take some time to resolve because of the unique immunity

issues presented by the prosecution of federal officers by a state entity, there is no longer an open

question of *whether* charges will be filed and *when*; the "decision" to charge that the Court found

lacking before has now been made.   Courts in similar postures as to the one here—where

defendants have been indicted, but trial dates have not yet been set—have granted stays.  *See*

*Keiper v. Victor Valley Transit Auth.*, 2016 WL 11651894, at *1 (C.D. Cal. May 19, 2016);

*Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, 2009 WL 2136986, at *3 (E.D.

Cal. July 15, 2009); *Mr. Dee's, Inc. v. Int'l Outsourcing Servs., LLC*, 2008 WL 4853601, at * 1

(E.D. Wisc. Nov. 3, 2008);[2] *Am. Express Bus. Fin. Corp v. RW Prof'l Leasing Servs. Corp.*, 225

---

[1] In the alternative, Plaintiffs also bring a survivorship action.  *See* Compl. (Dkt. 1) ¶¶ 177-182.

[2] In fact, in *Mr. Dee's*, the underlying criminal case was deemed complex and therefore removed
from the ambit of the Speedy Trial Act's requirements.  Minute Entry (Dkts. 21, 46, 52), United

F. Supp. 2d 263, 266 (E.D.N.Y. 2002).  And in all of these cases, the courts found that there was a substantial risk of prejudice to organizational defendants arising from an inability to obtain testimony from individuals who had been indicted on related charges.  *See Keiper*, 2016 WL 11651894, at *6 (granting stay of discovery because without indicted individual's testimony, the United States would be "at a disadvantage in this action."); *Taylor, Bean*, 2009 WL 2136986, at *3 (finding that because officers took the Fifth Amendment, the defendant corporation was "greatly prejudiced in  its ability to meaningfully defend itself in the civil matter"); *Mr. Dee's*, 2008 WL 4853601, at *2 (granting stay because risk of prejudice to organizational defendant was "substantial," where key witnesses invoked Fifth Amendment and therefore organizational defendant could not access key information and witnesses for its defense); *Am. Express Bus. Fin. Corp.*, 225 F. Supp. 2d at 266 (granting stay because the defendant's corporate officers planned to assert their Fifth Amendment rights and the officers were "central figures" in the corporation's defense).[3]

Officers Amaya and Vinyard's testimony are central to the United States' defense in this action.  Both are the only individuals who can testify as to their own personal observations and

States v. Internat'l Outsourcing Servs., LLC, et al., Dkt. No. 2:07-cr-57 (E.D. Wisc.).  At the time the district court granted the stay of the civil case, the court in the criminal case had already denied a motion for a speedy trial.  Order (Dkt. 99), Dkt. No. 2:07-cr-57 (E.D. Wisc. July 9, 2007).

[3] *See also Estate of Limon v. City of Oxnard,* 2013 WL 12131359, at *4 (C.D. Cal. Dec. 10, 2013) (ordering partial stay of discovery while district attorney's office continued to investigate individual defendants to determine whether to bring criminal charges, even where "no clear timetable for the completion of the DA's criminal investigation"); *Salcedo v. City of Chicago*, 2010 WL 2721864, *3 (N.D. Ill. July 8, 2010) (granting stay where criminal investigations were "ongoing" and even though it was "unclear" when trial would be set for indicted individual defendants); *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 946 (N.D. Ill. 2008) (granting stay as to all individual defendants where only some had been indicted and unindicted defendants faced "only the threat" of indictment); *Jones v. City of Indianapolis*, 216 F.R.D. 440, 451-52 (S.D. Ind. 2003) (granting limited stay of discovery as to individual defendants while Department of Justice continued its criminal investigation).

decision making rationales, which are significant to evaluate whether the use of deadly force was reasonable. *Ruszczyk as Trustee for Ruszczyk v. Noor*, 349 F. Supp. 3d 754, 762 (D. Minn. 2018) (granting stay in officer-involved shooting case because municipal defendants would be deprived of "information critical to their own defense on the merits" because of the officer's invocation of the Fifth Amendment).   And while the question of when a law enforcement officer is entitled to utilize deadly force against an individual is an objective test, it is informed by what that officer knew at the time deadly force was used. *See Graham v. O'Connor*, 490 U.S. 386, 397 (1989) ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."); *Ruszczyk*, 349 F. Supp. 3d at 762 ("To defend against the municipal liability claims asserted, the City Defendants must investigate Noor's observations and decisions in order to evaluate the reasonableness of his use of deadly force.").   The United States should be able to have its liability in this case decided on a full record, which includes Officers Amaya's and Vinyard's testimony, and that will be possible if this Court stays proceedings in this case until there is a final determination of criminal liability.

### C.  The remaining factors—the risk of prejudice to Plaintiffs, the Court's convenience, and the public interest—all favor a stay.

The remaining factors courts consider in granting a motion to stay—the risk of prejudice to Plaintiffs, the Court's convenience, and the public interest—all favor a stay.

1.      There is a low risk of prejudice to Plaintiffs in staying this motion at this juncture. In their motion for summary judgment, Plaintiffs argued they are entitled to certain adverse inferences from the officers' invocation of the Fifth Amendment in their depositions in this case. Pls.' Mem. MSJ (Dkt. 69) at 24-25.  In other words, Plaintiffs have tacitly conceded that the officers' testimony is, if not necessary for them to prevail on their claims, at least relevant.  But

as noted in the United States' opposition to Plaintiffs' motion for summary judgment, Plaintiffs fail to offer *any* evidence supporting the reliability of any of the inferences they seek, as required under the relevant case law.  Def.'s Opp'n to MSJ (Dkt. 98) at 22-25.  And, Plaintiffs go even further, asking this Court to employ adverse inferences to negate other record evidence, a wholly novel proposition which this Court may, in its discretion, decline.  *Id.*  Though Plaintiffs vacillate between arguing that the officers' testimony is not necessary and asking this Court to draw adverse inferences from the officers' invocation of their Fifth Amendment rights, the officers' testimony is undeniably a key piece of evidence for both parties.

To the extent that Plaintiffs claim key witness testimony would be lost if a stay is granted, *see* Pls.' Opp'n to Stay (Dkt. 57) at 6-7, *all* of the witnesses Plaintiffs expect to call at trial were deposed in discovery.  Pls.' Am. Witness List (Dkt. 54-2).  As for the witnesses Plaintiffs may call at trial, Plaintiffs had every opportunity to depose those witnesses during discovery and chose not to do so.  That strategic decision cannot now form the basis to block a motion to stay.

2.      Respectfully, the United States continues to believe the Court's convenience favors a stay.  It is clear from summary judgment briefings that the officers' testimony is a key part of this case for both parties.  And should this case proceed *without* the officers' substantive testimony, this Court will have to (a) assess whether there is independent reliable evidence elsewhere in the record to support adverse inferences from the officers' invocation of their constitutional rights and (b) determine evidentiary questions under Federal Rule of Evidence 703 concerning the extent to which the use of force experts may testify about statements the officers made, on which they relied.  Waiting until the officers can testify live at trial resolves both of these hotly contested legal issues.  Pls.' Opp'n MSJ (Dkt. 97) at 13-14; Def.'s Reply MSJ (Dkt.

115) at 8-9, 15-16; *see also* Pls. Mem. Strike (Dkt. 88) at 5-7; Def.'s Opp'n Strike (Dkt. 103) at 7-14.

   3.  The public interest favors a stay.  As detailed in the United States' memorandum in support of a stay, the public sometimes could be seen as having competing interests in the prompt resolution of civil matters and in the integrity of the criminal process.  *See* Def.'s Mem. Stay at 18.  In a battle between these interests, the civil case must give way to the criminal case to protect the public's confidence in the integrity of the criminal proceedings.  *Id.*

   Furthermore, because both officers will invoke the Fifth Amendment at a civil trial, "the record will be incomplete." *Ruszczyk*, 349 F. Supp. 3d at 765.  "Such an undeveloped record goes against the public's strong interest in [alleged] police misconduct[.]."  *Id.* (citation and internal quotation marks omitted).  The public interest is not served if this civil case moves forward now on a partial record, where it could be resolved on a full record after the indictments—which are subject to constitutional and statutory speedy trial requirements—are resolved by trial or some other means.[4]

---

[4] The public also "has an interest in ensuring that the criminal process can proceed untainted by civil litigation." *Ruszczyk*, 349 F. Supp. 3d at 765 (citations and internal quotation marks omitted).  If the extensive publicity this case has received to date is any indication, the additional publicity surrounding a civil trial could seriously impede Officers Amaya's and Vinyard's rights to a fair criminal trial.  *See, e.g.*, Tom Jackman, *Senators Keep Pressing for Details in Park Police Slaying of Bijan Ghaisar*, WASHINGTON POST, Aug. 6, 2020, at B5; Matthew Barakat, *Trial Set in Civil Suit Over 2017 Park Police Shooting*, ASSOCIATED PRESS, Aug. 20, 2020, *available at* https://apnews.com/article/shootings-religion-dc-wire-va-state-wire-us-news-26919987ada359a33297b2b8276701dc; Editorial Board, *The Death of Bijan Ghaisar, Minute by Minute*, WASHINGTON POST, Sept. 27, 2019, at A24; Associated Press, *Police Reports: Driver Shot By Park Police Was Unarmed*, ASSOCIATED PRESS, Oct. 29, 2018, *available at* https://apnews.com/article/e41df991aead41a5ae1eafffe8b25e79; Matt Stevens, *Video Shows U.S. Park Police Firing 9 Times in Fatal Shooting of Driver*, NEW YORK TIMES, Jan. 25, 2018, *available at* https://www.nytimes.com/2018/01/25/us/virginia-police-shooting.html?searchResultPosition=1.

## CONCLUSION

In sum, in view of the recent indictments of Officers Amaya and Vinyard, which resolve any uncertainty about whether and when criminal proceedings will commence, the United States respectfully requests that the Court reconsider its prior ruling on the United States' motion to stay proceedings.

Dated: October 20, 2020                                    Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

*By*:  _____/s/_____
DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
KIMERE J. KIMBALL
MEGHAN LOFTUS
Assistant United States Attorneys
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:     (703) 299-3891/3763/3757
Fax:     (703) 299-3983
dennis.barghaan@usdoj.gov
kimere.kimball@usdoj.gov
meghan.loftus@usdoj.gov

ATTORNEYS FOR THE UNITED STATES