IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JAMES AND KELARA GHAISAR, Individually and as Personal Representatives and Co-Administrators of the Estate of Bijan C. Ghaisar, Deceased, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br> Defendant. | Case No. 1:19-cv-1224 (CMH/IDD) |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES' MOTION TO RECONSIDER STAY

Plaintiffs now explicitly consent to some form of a stay of proceedings in this civil action. In particular, based on the recent indictments issued against Officers Amaya and Vinyard, Plaintiffs consent to a stay of any potential trial in this action. The extent of the parties' current stay-related dispute thus is limited only to whether this Court should first review and adjudicate the parties' cross-motions for summary judgment. For the reasons provided below, this Court should not wade into the complex merits of this case—whether at summary judgment or at trial—before entering a stay.

In arguing that this Court should first address the merits of this case through the parties' cross-motions for summary judgment (comprised of approximately 150 pages of briefing), Plaintiffs ignore this Court's prior statements about the circumstances in which a stay would be appropriate, a plethora of contrary case law, their own admission that the testimony of Officers' Amaya and Vinyard is relevant to both parties' cases, and the reality that this latter concession does not change whether one is talking about summary judgment or trial. Nonetheless, Plaintiffs

1

continue to "strongly oppose delaying this case," Opp'n Reconsider Stay (Dkt. 132) at 3, despite the indictments of Officers' Amaya and Vinyard by a Fairfax County grand jury for the same conduct at issue in this case. Plaintiffs' arguments in support of proceeding with this case are not persuasive, and in the end boil down to a desire to capitalize on the officers' invocation of their constitutional rights to obtain unwarranted adverse inferences. Respectfully, this Court should reconsider its previous denial of the United States' motion to stay.

## ARGUMENT

**I.     A mere delay in disposition of the civil case alone does not mean a stay must be denied.**

As detailed in the United States' opening memorandum, several courts have granted stays in civil cases where the civil defendants were indicted in criminal cases, even where the criminal cases did not yet have a trial schedule. *See* Mem. Reconsider Stay (Dkt. 122) at 7 (citing *Keiper v. Victor Valley Transit Auth.*, 2016 WL 11651894, at *1 (C.D. Cal. May 19, 2016); *Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Fin., Inc.*, 2009 WL 2136986, at *3 (E.D. Cal. July 15, 2009); *Mr. Dee's, Inc. v. Int'l Outsourcing Servs., LLC*, 2008 WL 4853601, at * 1 (E.D. Wisc. Nov. 3, 2008); *Am. Express Bus. Fin. Corp v. RW Prof'l Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 266 (E.D.N.Y. 2002)).

Plaintiffs' Opposition fails to address this case law. Instead, they cite to completely inapposite cases in which defendants have moved to stay a civil case pending a decision by the Judicial Panel on Multidistrict Litigation to consolidate cases for multi-district litigation ("MDL") proceedings. *See* Opp'n Reconsider Stay at 5; *see also Gibbs v. Plain Green*, *LLC*, 331 F. Supp. 3d 518, 524-25 (E.D. Va. 2018) ("Great Plains requests a stay of these proceedings pending the [Judicial Panel on Multidistrict Litigation] ruling"); *Sehler v. Prospect Mortg., LLC*, 2013 WL 5184216, at *3 (E.D. Va. Sept. 16, 2016) ("The Court finds that a stay pending

resolution of Defendant's MDL motion is not warranted in this case."). As such, these cases do not grapple with the circumstances presented here—prejudice to an organizational defendant when the individual employees who have engaged in the conduct on which a civil case is premised have exercised their constitutional rights against self-incrimination and refused to provide testimony in that civil case. Nor do those cases assess the impact of that prejudice against the length of any potential stay.

Any stay of a civil matter inherently means delay in its disposition, but courts do, in fact, grant stays where indictments have issued, *see* Mem. Reconsider Stay at 8, and even grant stays where—unlike here—there is no clear timetable for *indictment*, *see id.* at 8 n.3 (citing *Estate of Limon v. City of Oxnard,* 2013 WL 12131359, at *4 (C.D. Cal. Dec. 10, 2013) (ordering partial stay of discovery while district attorney's office continued to investigate individual defendants to determine whether to bring criminal charges, even where "no clear timetable for the completion of the DA's criminal investigation"); *Salcedo v. City of Chicago*, 2010 WL 2721864, *3 (N.D. Ill. July 8, 2010) (granting stay where criminal investigations were "ongoing" and even though it was "unclear" when trial would be set for indicted individual defendants); *Chagolla v. City of Chicago*, 529 F. Supp. 2d 941, 946 (N.D. Ill. 2008) (granting stay as to all individual defendants where only some had been indicted and unindicted defendants faced "only the threat" of indictment); *Jones v. City of Indianapolis*, 216 F.R.D. 440, 451-52 (S.D. Ind. 2003) (granting limited stay of discovery as to individual defendants while Department of Justice continued its criminal investigation)).[1] Indeed, this Court's prior stay ruling expressly held as much—that a

---

[1] Additionally, Plaintiffs do not address case law that holds that the private interest in disposition of a civil suit must give way to the public interest in the integrity of the criminal proceedings. *See* Def.'s Mem. Stay (Dkt. 45) at 18 (citing *Ruszczyk as Trustee for Ruszczyk v. Noor*, 349 F. Supp. 3d 754, 765 (D. Minn. 2018); *Estate of Limon v. City of Oxnard,* 2013 WL 12131359, at *6 (C.D. Cal. Dec. 10, 2013)).

stay can be appropriate based on the invocation of an individual's Fifth Amendment rights despite the inherent delay in final resolution of a civil case—but ultimately concluded that the lack of any indication of *when* Fairfax County would conclude its investigation and even decide whether to bring criminal charges outweighed the United States' legitimate interests. The mere fact that a stay would occasion *some* delay in the final disposition of this civil action thus does not alone require denial of this motion.

In any event, Plaintiffs themselves expressly consent to some form of stay of this civil case—which would thus cause a delay in having a final resolution. More specifically, while no one can say precisely when the criminal proceedings will conclude, Plaintiffs consent for this Court to stay the trial in this action, currently scheduled for November 16-18, 2020, and reconvene for a status hearing in March 2021.[2] Put simply, the recent indictments of Officers Amaya and Vinyard by a special grand jury in Fairfax County make concrete the threat of criminal prosecution that was only speculative when this Court heard the United States' motion to stay. Given that the standard for reconsideration of interlocutory orders are less stringent than post-judgment motions, *see Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003), and the intervening indictments, the United States respectfully suggests that this Court reconsider its previous denial of the United States' motion to stay.

---

[2] In again attempting to suggest that the criminal proceedings will continue *ad infinitum*, Plaintiffs point to the possibility that the officers may remove the case to federal court and argue that they are immune from suit. Opp'n Reconsider Stay at 5. Even if the officers do argue in favor of immunity, any delay occasioned by such additional criminal proceedings does not change the fact that—unlike the situation that this Court confronted on the United States' prior motion for a stay—there is now a definitive end in sight for these criminal proceedings (as opposed to a potentially never-ending investigation).

**II.     As Plaintiffs concede, the Officers' testimony is relevant to the merits of this case—whether at summary judgment or at trial.**

The true crux of the current stay-related dispute between the parties is whether this Court should stay the case before or after adjudicating the parties' complex cross-motions for summary judgment. Although Plaintiffs may wish to proceed to summary judgment now in order to avail themselves of a more limited record, whether the Officers' testimony is relevant to the merits of this dispute is the same whether one is considering those merits at summary judgment or at trial.

In this respect, the United States has consistently maintained that Officers Amaya's and Vinyard's testimony about their subjective perceptions about the events before and during the shooting are relevant to *both* parties' cases, even if the ultimate inquiry is an objective one. *See* Mem. Stay (Dkt. 45) at 13 ("Officers Amaya's and Vinyard's testimony are central to the United States' defense in this action" because they "are the only individuals who can testify as to their own personal observations and decision making rationales, which are significant to evaluate whether the use of deadly force was reasonable."); *id.* at 15 ("Should the factfinder decline to [draw the adverse inference] on a particular issue, Plaintiffs could be faced with a lack of evidence on that particular point."). Plaintiffs' own position on the merits of their civil claims has largely been identical.[3] Pls.' Mem. Summ. J. at 15-16 (Dkt. 93) (listing as "undisputed" material facts "Officers' Amaya's and Vinyard's Actions and Perceptions during the Chase and

---

[3] To be sure, Plaintiffs' position on this point has been somewhat inconsistent. *Compare* Opp'n Stay (Dkt. 57) at 5 ("There is ample evidence here, including video of the incident, to allow the Court to determine whether the officers' conduct was reasonable without hearing from the officers themselves."), *with* Pls.' Mem. Summ. J. at 15-16 (Dkt. 93) (listing as "undisputed" material facts "Officers' Amaya's and Vinyard's Actions and Perceptions during the Chase and Shooting"), and *id.* at 24 (arguing Plaintiffs are "entitled" to adverse inferences about whether Officers Amaya and Vinyard could have reasonably believed deadly force is necessary), *with* Opp'n Reconsider Stay (Dkt. 132) at 7 (arguing Plaintiffs "have been disadvantaged in this litigation by the officers' invocation of the Fifth Amendment at least as much as the Government.").

Shooting"); *id.* at 24 (arguing Plaintiffs are "entitled" to adverse inferences about whether Officers Amaya and Vinyard could have reasonably believed deadly force is necessary). In their Opposition to the instant motion, Plaintiffs concede as much. *See* Opp'n Reconsider Stay at 7 (arguing Plaintiffs "have been disadvantaged in this litigation by the officers' invocation of the Fifth Amendment at least as much as the Government."). That is because while the question of when a law enforcement officer is entitled to utilize deadly force against an individual is measured by an objective test, it is informed by what the officer knew at the time deadly force was used. Mem. Reconsider Stay at 9 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1990)). Neither this analytical framework nor the evidence relevant to this Court's application of that framework in this civil action changes between summary judgment and trial—they are identical. Accordingly, the summary judgment vs. trial distinction that Plaintiffs attempt to have this Court endorse is simply non-existent.

Noticeably, however, Plaintiffs sidestep this issue in their Opposition to the instant motion—albeit while implicitly endorsing it by seeking adverse inferences *on this very point* in their motion for summary judgment. *See* Pls.' Mem. Summ. J. at 24 (arguing Plaintiffs are "entitled" to adverse inferences about whether Officers Amaya and Vinyard could have reasonably believed deadly force was necessary). Instead, Plaintiffs claim that the United States is attempting to "have its cake and eat it, too," by arguing that this case should be decided on a full record while also arguing *against* this Court drawing adverse inferences from the officers' testimonial silence. Opp'n Reconsider Stay at 6. But that has the United States' position exactly backwards. The United States has *always* taken the position that this Court should decide its potential tort liability here on a fully-developed record (*i.e.*, *with* the officers' testimony); indeed, that is why it moved for a stay *before* the parties began the summary judgment briefing process.

6

Only after this Court denied the United States' previous stay motion—because there was no public timetable from the Fairfax County Commonwealth's Attorney on a charging decision—was the United States forced to continue litigating this case with an extremely limited record as to the officers' perceptions.  As a result, the United States has taken the position, supported by the pertinent case law, that Plaintiffs are not entitled to an adverse inferences on the officers' subjective beliefs because there is competent record evidence that undercuts the inferences Plaintiffs wish this Court to draw, thus making any inferences unreliable.  Def.'s Opp'n to Summ. J. (Dkt. 98) at 22-25.  Seeking a stay now so that the officers can eventually testify at a trial in the civil action is entirely consistent with that position, as the United States has *always* advocated for the officers' testimony to be a part of the record on which the instant tort claims are decided.  With indictments, there is now the opportunity for the officers to provide that testimony after the conclusion of criminal proceedings, which would eliminate the need for the Court to resolve hotly contested evidentiary issues—including the Plaintiffs' requested adverse inferences—presented by the limited summary judgment record the Court now has before it.  *See* Mem. Reconsider Stay at 10-11.

In fact, Plaintiffs' request for adverse inferences on the officers' subjective perceptions, in the face of contradicting testimony from the officers, only highlights the need for this case to be decided with the officers' testimony.  That is the real heart of Plaintiffs' opposition to a stay before this Court adjudicates the parties' cross-motions for summary judgment—their desire to take advantage of the officers' invocation of their constitutional rights through adverse inferences, before the officers' actual testimony becomes available.  Because the issues occasioned by the officers' refusal to testify do not differ whether this Court is adjudicating the

7

merits of these tort claims at summary judgment or at trial, this Court should stay the proceedings now.

### III. Plaintiffs' argument that the public interest favors proceeding *without* the officers' full testimony is unavailing.

Plaintiffs renew their argument that "there is significant public interest in resolving this action promptly, given the nationwide epidemic of police violence, the high-profile nature of this case in particular, and the Government's decision to leave these two officers largely on duty since the killing."[4] Opp'n Reconsider Stay at 4. Plaintiffs make no attempt to reconcile this statement with case law that finds that the public interest is served in officer-involved shooting cases on the basis of a *full* evidentiary record—which includes the officers' testimony unencumbered by assertions of the Fifth Amendment. In *Ruszczyk as Trustee for Ruszczyk v. Noor*, a civil case involving an officer-involved shooting, the district court stayed the civil case pending the resolution of criminal charges for the same conduct, noting that the officer's invocation of the Fifth Amendment privilege against self-incrimination in the civil case meant that the public—and the parties—would not be served by having the case decided on an incomplete record. 349 F. Supp. 3d 754, 765 (D. Minn. 2018). To continue with the civil case, without the officer's testimony, would mean that "[t]he parties and public will instead be left in essentially the same position as they are now: with no explanation for the July 15, 2017 shooting of Ruszczyk." *Id.* Plaintiffs' claim that the public interest would be served in proceeding in this civil matter *without* the officers' testimony is therefore unpersuasive.

---

[4] As the United States detailed in its opposition to Plaintiffs' motion for summary judgment, the officers have been on administrative duty. Def.'s Opp'n Summ. J. (Dkt. 98) at 9-10.

## **CONCLUSION**

For the reasons set forth above, as well as those set forth in the United States' memorandum in support of its motion to reconsider the stay and its original memorandum in support of a motion to stay the proceedings, the United States respectfully requests that this Court stay further proceedings in this civil action, including summary judgment proceedings, pending the resolution of the criminal charges against Officers Amaya and Vinyard in Fairfax County.

Dated: October 29, 2020                      Respectfully submitted,

                                         G. ZACHARY TERWILLIGER
                                         UNITED STATES ATTORNEY

*By*:       /s/
      DENNIS C. BARGHAAN, JR.
      Deputy Chief, Civil Division
      KIMERE J. KIMBALL
      MEGHAN LOFTUS
      Assistant United States Attorneys
      2100 Jamieson Avenue
      Alexandria, Virginia 22314
      Tel:    (703) 299-3891/3763/3757
      dennis.barghaan@usdoj.gov
      kimere.kimball@usdoj.gov
      meghan.loftus@usdoj.gov
      ATTORNEYS FOR THE UNITED STATES