# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | | |
|---|---|---|
| JAMES GHAISAR, *et al.*, | : | |
| Plaintiffs, | : | |
| v. | : | Civil Action No. 1:19-cv-1224 (CMH/IDD) |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

## **OFFICERS AMAYA AND VINYARD'S OPPOSITION TO MOTION TO COMPEL**

Intervenors Alejandro Amaya and Lucas Vinyard, through counsel, respectfully submit this opposition to Plaintiff's motion to compel deposition testimony.

## BACKGROUND

The Plaintiffs first deposed Officers Amaya and Vinyard more than two years ago. Both officers asserted their Fifth Amendment privilege against self-incrimination during the deposition. At the time, the Department of Justice had already declined to bring federal civil rights charges against the officers because it was "unable to prove beyond a reasonable doubt that the officers did not perceive a deadly threat" from Bijan Ghaisar. Letter from T. Patrick Martin to James Ghaisar, Nov. 14, 2019, ECF No. 150-1. Nevertheless, in October 2020, the Commonwealth's Attorney in Fairfax County obtained indictments for manslaughter and reckless discharge of a firearm.

The officers removed the case to this Court and the Honorable Claude M. Hilton dismissed the charges. *Commonwealth v. Amaya*, No. 1:21-cr-00091 (E.D. Va. Oct. 22, 2021), ECF No. 19; *Commonwealth v. Vinyard*, No. 1:21-cr-00092 (E.D. Va. Oct. 22, 2021), ECF No. 23. After reviewing the undisputed evidence, Judge Hilton found that "the officers were

reasonable to fear for Officer Amaya's life and discharge their weapons when Ghaisar's Jeep lurched forward while Officer Amaya was standing in front of Ghaisar's vehicle." *Id*. at 7. Accordingly, their actions were "necessary and proper" to their duties as federal agents and the Supremacy Clause prohibited state prosecution. *Id*. The Commonwealth appealed the ruling initially, but later withdrew its challenge. *Commonwealth v. Amaya*, No. 1:21-cr-00091 (E.D. Va. Apr. 25, 2022), ECF No. 36; *Commonwealth v. Vinyard*, Case No. 1:21-cr-00092 (E.D. Va. Apr. 25, 2022), ECF No. 33.

Meanwhile, the parties in this matter filed cross-motions for summary judgment. The matter was then stayed, pending resolution of the criminal case. Order, Nov. 2, 2020, ECF No. 137.

When the Fourth Circuit dismissed the appeal, counsel for the Ghaisars asked the Department of Justice to reopen its investigation. Letter from Kristen Clarke to Thomas Connolly, June 9, 2022, ECF No. 150-3. In a letter dated June 9, 2022, the Department said it was "aware of no information obtained since the closure of the federal investigation that warrants reopening it at this time." *Id*. However, it also invited the Ghaisars to contact the Criminal Section of the Civil Rights Division "[s]hould additional information come to your attention." *Id*. The Ghaisars apparently tried again, in October 2022, to convince the Department of Justice to reconsider, but were unsuccessful. Email from Robert Moossy to Thomas Connolly, Oct. 13, 2022, ECF No. 150-4.

After receiving the June letter, the Plaintiffs had the stay lifted and discovery reopened so that they might depose the officers again. Order, ECF No. 145. The officers informed the Ghaisars that they would again invoke the Fifth Amendment and decline to answer questions about the shooting. In spite of this information, the Plaintiffs went forward with the depositions.

Once again, the officers declined to answer questions based upon their Fifth Amendment privilege.

The Plaintiffs now seek an order compelling the officers to sit for a third deposition and to answer these questions.

## LEGAL STANDARD

The Fifth Amendment allows a person to remain silent if there is any "plausible possibility that the person might be prosecuted in this country." *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC,* 415 F. Supp. 2d 628, 633 (E.D. Va. 2006); *see also In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 871 (7th Cir. 1979) ("When a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster"). The Supreme Court has held that the privilege extends to all answers that "could furnish a link in the chain of evidence needed to prosecute the claimant for a crime." *Hoffman v. United States*, 341 U.S. 479, 486-87 (1951).

## ARGUMENT

**I. REALISTIC POSSIBILITY OF CRIMINAL PROSECUTION REMAINS.**

The Plaintiffs seek to compel the officers' testimony by asserting that there is no realistic possibility of criminal prosecution. They contend that the dismissal of the Virginia case and Department of Justice's statements that it "will not pursue federal criminal rights charges" are sufficient to overcome the "realistic possibility" standard. But the very statements and cases the Plaintiffs rely upon defeat their own arguments.

The Plaintiffs's only argument is an attempt to distinguish this case from *Belmonte v. Lawson*. In *Belmonte*, the plaintiffs argued there was no realistic possibility of prosecution because the United States Attorney signed an affidavit stating that the government would not proceed with prosecution. *Belmonte v. Lawson,* 750 F. Supp. 735, 737 (E.D. Va. 1990). The

AUSA affirmed that the "file has been closed and no further investigation is contemplated." *Id.* Nevertheless, the court found this insufficient to override the Fifth Amendment privilege because "there is no means of knowing the nature and scope of any incriminating evidence [the witness] might give." *Id.* The court further reasoned that "a new prosecutor faced with new evidence . . . might well reach a different prosecutorial decision." *Id.*

The Plaintiffs simply say this case is different because the Department of Justice stated its intention three times and across two administrations. But that does nothing to assure the officers that a "new prosecutor faced with new evidence" might reach a different conclusion. One of the very documents the Ghaisars rely upon—the July 9, 2022 letter from the Department of Justice—makes this explicit: "Should additional information come to your attention, please contact the Criminal Section of the Civil Rights Division." In fact, the other statements are similarly qualified. The November 14, 2019 press release states that *"[a]t this time*, there is insufficient evidence to establish beyond a reasonable doubt that the officer willfully committed a violation of 18 U.S.C. § 242." ECF No. 150-2. The November 19, 2019 letter said the decision "is limited to a federal civil rights prosecution and does not preclude other components of the U.S. Department of Justice, other agencies, or state authorities from taking action[.]" ECF No. 150-1.

Moreover, while arguing that there is no possibility of prosecution, it appears from the documents attached to their motion that the Ghaisars continue trying to convince the Department of Justice to prosecute the officers. *See, e.g.*, ECF No. 150-3 ("We are writing in response to your request that the Department of Justice reopen its investigation"); ECF No. 150-4 (email sent just last month reiterating the decision not to prosecute). The Ghaisars' continued efforts contradict their arguments and underline the real danger the officers face.

Finally, the *Belmonte* court explained that in assessing whether a realistic possibility of prosecution exists, courts should focus "on more reliable, traditional factors such as statutes of limitations, double jeopardy and the grant of immunity." *Id.* at 739. But in the absence of those factors, "[w]hen a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster." *Id.* (citing *In re Folding Carton*, 609 F.2d at 871). Here, the statute of limitations has not passed, double jeopardy has not attached, and the government has not offered immunity.

Most importantly, however, is the Department of Justice's position on the instant motion. Instead of weighing in and informing the Court of its position, the Department has elected to not file a position—leaving the parties to speculate. The position of not having a position further supports the officers' Fifth Amendment concern because the Department could easily dispel it if it was not well taken. Therefore, the Department's statements are insufficient to overcome the officers' Fifth Amendment privilege.

## II.     THE OFFICERS HAVE NOT WAIVED ATTORNEY-CLIENT PRIVILEGE.

The Plaintiffs further ask the Court to allow them to invade upon the officers' attorney-client privilege because Officer Amaya's attorney made a presentation to the government in the hopes of convincing the Government to not charge his client—a common practice in the practice of criminal law. The Plaintiffs claim that opens the door to an unbridled inquiry into privileged communications between the officers and their lawyers. The Plaintiffs' claim is without merit for two reasons. First, the information provided in the proffers, themselves, did not waive the officers' attorney-client privilege. Second, discussions by the defendants' lawyers with the government made in the hopes of convincing the Government to not charge the defendants are protected by Rule 410 of the Federal Rules of Evidence.

5

The conversation that Officers Amaya and Vinyard had with their counsel relating to this case were privileged and they understood them to be so. As the late Justice Burger stated, the purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682, 66 L. Ed. 2d 584 (1981) (internal citations omitted).

The discussions that the Officers' attorneys had with the government do not constitute waivers of the attorney-client privilege. Plaintiffs argue that, because a proffer was made to the government, any attorney-client privilege relating to the subject matter of the proffer has now been waived, subjecting the officers and presumably their attorneys to testify about communications that they understood to be privileged. Plaintiffs' argument is based upon a misinterpretation of a Fourth Circuit case – *In re Martin Marietta Corp.* – for support. First, put plainly, the Fourth Circuit and others have clearly rejected the idea that privilege is waived whenever a document is filed or transmitted that relates to the subject matter of the privilege. *See Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 885 F.3d 271, 276 (4th Cir. 2018) (declining to infer a waiver of privilege merely because a party's disclosure covers "the same topic" as that on which it had sought legal advice); *United States v. O'Malley*, 786 F.2d 786, 794 (7th Cir. 1986) (holding the same and noting that privilege is waived only when the client "disclose[s] the communication with the attorney itself").

Ironically, Plaintiffs' cited case of *In re Martin Marietta Corp.* actually undercuts Plaintiffs' argument. There, the court did conclude that privilege had been waived over protected

6

internal audit interviews and associated internal notes and memoranda. However, this was not because the disclosure had been made to the government relating to that subject matter, but because the disclosure in question directly "quoted from some audit interviews" and summarized "in substance and format the interview results" – in other words, the disclosure itself so closely resembled the underlying documents that the underlying communication had been all but disclosed, rendering the privilege moot. *See In re Martin Marietta Corp.*, 856 F.2d 619, 626 n. 2 (4th Cir. 1998). Here, neither Amaya's attorney proffer or Vinyard's communication with the government quoted from any privileged communications or interviews, nor did it identify where the information came from or summarize in form and substance any such privileged communications. Instead, they discussed – in relatively general terms without providing the source of the information – "the propriety of [his] conduct," such that the court should be as "unwilling to infer a waiver of privilege on these facts" as the Fourth Circuit has been in the past. *See In re Fluor Intercontinental, Inc.*, 803 F. App'x 697, 702 (4th Cir. 2020). To infer such a waiver of privilege is to endorse the "untenable result" that attorney-client communications relating to the preparation of legal documents are unprotected, and we respectfully ask this court not to do so. *Id.* Importantly, the conversations did not identify the source of the information that was being proffered.

It appears the reason that the Plaintiffs seek to question the officers about their privileged communications with their lawyers is to subsequently impeach them with the testimony of their former lawyers or with government officials present during the proffers—including Assistant United States Attorneys. Even if the attorney-client privilege issue did not exist, the Plaintiffs still would not be able to get around the Federal Rules of Evidence.

7

Rule 410 of the Federal Rules of Evidence is designed to encourage a frank and open discussion between the attorneys for defendants and Government counsel.  The rule prohibits, in both criminal and civil cases, the use of "a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea." *Fed. R. Evid.* 410.  Allowing the statements made by Amaya or Vinyard's counsel would not only violate this rule, but also create a broader chilling effect on the plea-bargaining process for all defendants or potential defendants by preventing them or their attorneys from being able to have candid conversations about their case for fear it would be used against them.  *See United States v. Davis*, 617, F.2d. 677, 683 (D.C. Cir. 1979) (noting "the inescapable truth that for plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him" (quoting *United States v. Herman*, 544 F2d. 791 (5th Cir. 1977))). Here, attempting to use the statements made during the proffer hearing, in any manner, would violate this rule.

## CONCLUSION

Officers Alejandro Amaya and Lucas Vinyard respectfully request that the court to preserve their Fifth Amendment and attorney-client privileges and deny Plaintiffs' motion to compel

Dated: November 22, 2022

  /s/ Daniel S. Crowley
Daniel S. Crowley
Virginia Bar No. 79567
HANNON LAW GROUP, LLP
1800 M Street, N.W., Suite 850 S
Washington, D.C. 20036
Phone: 202-232-1907 Fax: 202-232-3704
dcrowley@hannonlawgroup.com

*Counsel for Officer Vinyard*

  /s/
Jonathan Fahey
Brown Rudnick LLP
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
JFahey@brownrudnick.com

*Counsel for Officer Amaya*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

                                              /s/
                                       Jonathan L. Fahey